## PRIEST v WAPAKONETA (city) et

Ohio Appeals, 3rd Dist, Auglaize Co

No 116.   Decided Feb 2, 1937

Walter S. Jackson, Lima, Anderson & Lusk, Wapakoneta, and Miles & O'Brien, for appellant.

Dan McKeever, Wapakoneta, Timmermeister & Monahan, Wapakoneta, and W. K. Divers, Cincinnati, for appellees.

## OPINION

By GUERNSEY, J.

This is an action brought by the plaintiff and appellant, taxpayer of the City of Wapakoneta, a non-charter city, against various municipal officials of the city, as defendants and appellees, seeking an injunction restraining the appellees from (1) issuing or delivering any mortgage revenue bonds or other evidences of indebtedness pursuant to Ordinance No. 1380 passed by the Mayor and City Council of Wapakoneta, (2) executing any mortgage, indenture, or deed of trust or other instrument securing any such mortgage revenue bonds or other evidence of indebtedness; (3) constructing or installing any electric light equipment for the generation and supplying of electricity to the city of Wapokenta and its inhabitants or any building to house any such equipment; (4) performing any of their promises, covenants and obligation contained in a certain document entitled "Loan and Grant Agreement between the City of Wapakoneta and the United States of America"; dated February 18, 1935, or the subsequent agreement substituted for the said one of February 18, 1935; and (5) expending or distributing any funds of the city of Wapakoneta for the purpose of complying with, carrying out or consummating any of the purposes of plans set forth in said ordinance Number 1380.

The case was tried in the Court of Common Pleas of Auglaize County, Ohio, where the petition of the plaintiff and appellant was dismissed and the injunction denied. From that action this appeal was taken to this court and this court graned a temporary injunction restraining defendants and appellees from performing any of the aforementioned acts pending the decision herein.

The only pleadings other than the pleadings with reference to motions for temporary injunctions, are the petition and the answer.

The petition, in addition to the formal allegations as to the capacities of the plaintiff and defendant, reads as follows:

"That on May 6, 1936, the Council of said City of Wapakoneta passed Ordinance No. 1380, a copy of which is hereto attached, made a part hereof and marked 'Exhibit A.'

"That said ordinance was approved by the defendant, Vern J. Woehler, as Mayor of said City, on May 8th, 1936, and the same was published in the 'Wapakoneta Daily News' on May 11th, 1936, and plaintiff is informed and alleges and avers that same will be published again.

"That said Ordinance No. 1380 is contrary to the laws of the State of Ohio and its purported passage is unlawful for the following reasons, among others, viz:

"(1) That the same contains more than one subject in that it purports to authorize (a) the construction of an electric plant (b) the construction of a building (c) the issuance of $104,000 principal amount of Mortgage Revenue Bonds (e) the granting of a franchise (f) the recognition of a certain agreement with the United States of America, and that all of such subjects are not clearly expressed in the title of said ordinance and said ordinance hence violates the mandatory requirements of §4226 GC.

(2) That said ordinance purports to authorize the construction of an electric light and power plant and building and the issuance of certain Mortgage Revenue Bonds pursuant to the provisions of the Constitution of the State of Ohio, the Uniform Bond Act of Ohio, and House Bill No. 544 of the 91st General Assembly of Ohio, 1935 Session, whereas the construction actually proposed and contemplated by said ordinance is an extension to a presently owned and operated municipal electric light and power plant and can only be lawfully installed or erected pursuant to the statutes of the State of Ohio relating to such extensions and not pursuant to the provisions of Article XVIII of the Constitution of said State, that the purported effort of the defendants to construct said plant and building pursuant to the aforementioned Uniform Bond Act and House Bill, and to finance such construction through the issuance and sale of mortgage bonds under §12 of Article XVIII of the Constitution of Ohio constitutes an unlawful attempt on their part to obtain the benefits and advantages of statutes and constitutional provisions of the State of Ohio which are in conflict and related to different subject matters in that said constitutional provision governs the original construction of public utilities by municipalities, whereas the statutory provisions control extensions to existing municipally owned utilities of the character here proposed by the defend-

ants; that said statutory and constitutional provisions further conflict in that, in event of any referendum on any question presented by the proposed municipal program, the statutory provisions require the affirmative vote of 60% or 65% of the electors, depending upon the identity of the purchaser of the bonds intended to be sold. Whereas the constitutional provision requires the affirmative vote of a majority of the electors voting thereon.

"(3) That said ordinance is not solely a declaration of the necessity for the construction of a municipal light and power plant and building as required by the laws of the State of Ohio as the first step in connection with the ultimate construction and operation of such a plant but is an unlawful attempt to authorize in one ordinance the construction of said plant, the method of financing the payment thereof, and the granting of a franchise in connection therewith, and that said ordinance is so vague and ambiguous in its terms and provisions that neither the plaintiff nor any other taxpayers, nor the qualified electors of the said City of Wapakoneta can intelligently form an opinion or conclusion as to what is actually intended to be done by the city pursuant thereto; that said ordinance is in this respect unlawful in that the laws of the State of Ohio require that a municipal program of the character contemplated by said ordinance be executed and consummated by a series of ordinances each dealing with a separate, necessary phase or step in said municipal program.

"(4) That §4 of said Ordinance No. 1380 is unlawful in that the same provides that the bonds authorized pursuant thereto 'shall be first offered to the Sinking Fund ‾ustees at par and accrued interest and as many of said bonds as shall not be taken by said Sinking Fund Trustees shall be sold at private sale to the Federal Emergency Administration of Public Works', whereas the agreement pursuant to which said Federal Emergency Administration of Public Works has covenanted and agreed to purchase said bonds is unlawful in that (a) the execution of said agreement has never been properly authorized by the council of the City of Wapakoneta, and (b) in said agreement said Mayor and Council of the City of Wapakoneta unlawfully delegate to said agency of the United States Government powers and duties vested in and necessary to be exclusively exercised by said Mayor and Council of the City of Wapakoneta; that a copy of said agreement is attached hereto and marked 'Exhibit B.'

"(5) That §§5 and 7 of said Ordinance No. 1380 are unlawful in that the same prescribe a manner for the deposit of public funds and the securing of the same inimical to and prohibited by the provisions of §§4294 **and** 4295 GC, and further, that said §5 restricts the expenditures of such funds so deposited to the terms of the aforementioned unlawful agreement between the City and the United States of America, 'Exhibit B.'

"(6) That the provisions contained in §13 of said Ordinance No. 1380, whereby the City of Wapakoneta attempts to grant a franchise to any purchaser of the property at foreclosure of the mortgage referred to therein, are unlawful in that the same are contrary to the laws of the State of Ohio and especially to the provisions of §614-75 GC, and further, that the provisions of Sections G and H of §13 of said Ordinance No. 1380 are contrary to public policy as well as to the laws of the State of Ohio vesting in the Public Utilities Commission of Ohio certain regulatory powers relating to the determination of the fair value of the property of public utilities and the rate of return allowed to be earned thereon; that Section F of said §13 is contrary to the laws of the State of Ohio in that by the terms of said last mentioned section, the City of Wapakoneta attempts by contract to tax property for an indefinite term of years and without any reference to what may be the then indebtedness of the said City, and which such attempt is further unlawful in that it constitutes an effort by the existing Mayor and City Council of the City of Wapakoneta to improperly bind and commit their successors in office."

The answer of defendants admits their individual and official capacities as set forth in the petition and specifically denies each and every allegation in the petition contained, prejudicial to them. In addition, the answer avers that the City of Wapakoneta by ordinance duly enacted entered into an agreement with the United States of America, which agreement is a part of the record in this case and which agreement it is alleged clarifies some of the ambiguousness alleged by plaintiff.

By stipulation of the parties the case was submitted to this court upon a transcript of the evidence in the Court of Common Pleas together with the additional evidence introduced at the trial of said cause in this court.

Prior to the general election held in the

City of Wapakoneta in November, 1934, certain electors of said city duly initiated an ordinance declaring it necessary for the City of Wapakoneta, Auglaize County, Ohio, to own and operate a public utility, to-wit: a municipal power and light plant for the generation and supplying of electricity to the incorporation and inhabitants thereof and to transmit such electricity over the present municipally owned distribution system and street lighting system. And said ordinance was thereafter at the general election held in November, 1934, duly submitted to the electors of said city on the question "Shall the proposed ordinance to construct an electric light plant by the City of Wapakoneta, Ohio, he adopted?", and on said question 1515 votes were cast in the affirmative and 895 votes were cast in the negative.

On the 6th day of February, 1935, the council of the City of Wapakoneta duly passed ordinance No. 1344 of said city authorizing the mayor and auditor on behalf of said city to enter into a certain loan and grant agreement with the United States of America, which was duly approved by the mayor of said city, and such loan and grant agreement thereafter executed by the respective parties thereto.

On February 5, 1936, the council of said city duly passed Resolution No. 677 of said city being a resolution requesting the auditor of the city to file his certificate as to the maximum maturity of bonds proposed to be issued and declaring an emergency which was duly approved on the 5th day of February, 1936, by the mayor of said city, said resolution reciting that the council of said city proposed to issue mortgage revenue bonds pursuant to **Article XVIII, §12 of the Constitution of Ohio,** and the Uniform Bond Act as amended, for the purpose of constructing a municipal light and power plant, by the purchase and installation of electric light equipment for the generation and supplying of electricity to the corporation and inhabitants thereof and to distribute such electricity over the present municipally owned distribution and street lighting system, including also the construction of a fireproof building to house the same, and proposed to expend the sum of $79,000.00 for the construction of electric light and power plant by the purchase and installation of electric light equipment, and the sum of $25,000.00 for a fireproof building to house the same, and directed the auditor as fiscal officer of the city to certify to the council his estimate of the life of the improvement and the maximum

maturity of the bonds to be issued therefor.

On May 6, 1936, the council of the city adopted, and on May 8th the mayor of the city approved, the ordinance in question in this action, numbered 1380. This ordinance is entitled:

"On Ordinance to Declare the Necessity for Constructing a Municipal Light and Power Plant, by the Purchase and Installation of Electric Light Equipment, for the Generation and Supplying of Electricity to the Corporation and Inhabitants thereof, and to Distribute Such Electricity over the Present Municipally Owned Distribution and Street Lighting System, Including also the Construction of a Fireproof Building to House the Same, in the City of Wapakoneta; to Authorize the Issuance of $104,000 Mortgage Revenue Bonds of said City under **§12 of Article XVIII of the Constitution,** and the Uniform Bond Act, and House Bill No. 544 of the 91st General Assembly 1935, for the Purpose of Constructing the Aforesaid Improvement; To Authorize a Mortgage of said System and the Extensions thereto with a Pledge of the Revenues Thereof; and to Provide a Franchise to Become Effective in the Event of Foreclosure of said Mortgage."

This ordinance is too long to set forth in full but except as hereafter specifically pointed out, covers the subject matter referred to in the paragraphs numbered (1), (2), (3), (4), (5) and (6) in the petition herein.

Ordinance No. 1380 contains two references to the loan and grant agreement entered into between the city and the United States government authorized by Ordinance No. 1344. The first reference is in §4 which provides: "Said bonds shall be first offered to the sinking fund trustees at par and accrued interest and as many of said bonds as shall not be taken by said sinking fund trustee shall be sold at private sale to the Federal Emergency Administration of Public Works." The second reference appears in §5 of Ordinance No. 1380 which provides that the proceeds from the sale of said bonds, except premium, if any, and accrued interest thereon, shall be placed in the treasury to the credit of the proper fund and deposited in a bank or banks which are members of the federal reserve system and of the federal deposit insurance corporation in a special account or accounts, and be used only for the purpose of paying for the aforesaid improvements to the system of the city and all things

necessary and incident thereto, in accordance with the terms of the agreement between the city and the United States of America.

Paragraphs 13 and 14 of the loan and grant agreement contain the following provisions by which the plaintiff claims the city unlawfully delegates powers vested in and necessary to be exercised by it, to-wit:

"13. Construction of Project. Not later than upon the receipt by it of the first Bond payment, the Borrower will commence or cause to be commenced the construction of the project, and the Borrower will thereafter continue such construction or cause it to be continued to completion with all practicable dispatch, in an efficient and economical manner, at a reasonable cost and in accordance with the provisions of this Agreement, plans, drawings, specifications and construction contracts which shall be satisfactory to the Administrator, and under such engineering supervision and inspection as the Administrator may require. Except with the written consent of the Administrator, no materials or equipment for the Project shall be purchased by the Borrower subject to any chattel mortgage, or any conditional sale or title retention agreement."

"14. Construction Work. All work on the Project shall be done subject to the rules and regulations adopted by the Administrator to carry out the purposes and control the administration of the Act. By the act of executing this agreement the Borrower acknowledges receipt of a copy of the rules and regulations set out in Bulletin No. 2, Non-Federal Projects revised March 3, 1934 (as amended to November 26, 1934) entitled 'P.W.A. REQUIREMENTS as to BIDS, CONTRACTORS; BONDS AND CONTRACT, WAGE AND LABOR PROVISIONS AND GENERAL INSTRUCTIONS as to APPLICATIONS AND LOANS AND GRANTS,' and covenants that said rules and regulations, with all blank spaces filled in as provided in said Bulletin, will be incorporated verbatim in all CONSTRUCTION CONTRACTS for work on the Project."

On the 24th day of August, 1936, and after trial and judgment of this case in the Common Pleas Court of Auglaize County, Ohio, the council of the City of Wapakoneta duly passed Ordinance No. 1388 of said city, being an ordinance to approve the provisions of a superceding loan and grant agreement between the City of Wapako-

neta and the United States of America with reference to the construction of an electric generating station; to authorize the mayor to execute said superceding loan and grant agreement on behalf of the city; and to declare an emergency, which ordinance was on said date duly approved by the mayor of said city.

This superceding loan and grant agreement was duly executed by the proper officials of the city and the United States government and is in substantially the same form as the original agreement except that, the provisions of Paragraphs 13 and 14 of the original agreement which the plaintiff claims constitute unlawful delegations of power on the part of the city, are eliminated.

On September 16, 1936, the council of the City of Wapakoneta duly passed Resolution No. 708 of said city, being a resolution to approve and ratify the execution of a loan and grant agreement between the City of Wapakoneta, Ohio, and the Public Works Administration of the United States of America, which, among other things, provides that the execution of the loan and grant agreement entered into between said city and said Public Works Administration on the 25th day of August, 1936, and all the acts of the mayor and auditor of said city in entering into said agreement for and on behalf of said city and all the terms and conditions of said agreement be and the same are hereby approved and ratified by the council.

There is no dispute in this case as to the facts, the court being called upon only to determine whether the city would be acting within its lawful authority in carrying out the provisions of Ordinance No. 1380 and in carrying out either the original agreement or the superceding agreement with the Federal Administration of Public Works.

Before considering the specific objections of the plaintiff to the legality of Ordinance No. 1380, we deem it advisable to set forth the only provisions of the Constitution of Ohio applicable to or illustrative of the powers of a municipality to do the various things sought to be done by the City of Wapakoneta in the enactment of Ordinance No. 1380 and the other ordinances and resolutions, the general rules applicable to the interpretation and construction of such provisions in so far as they pertain to the subject matter of this action, and the interpretation and construction of certain of such provisions by the courts of Ohio. The constitutional provisions referred to, are as follows;

### Sec 1, Article XVIII.

"Municipal corporations are hereby classified into cities and villages. All such corporations having a population of five thousand or over shall be cities; all others shall be villages. The method of transition from one class to the other shall be regulated by law."

### Sec 2, Article XVIII.

"General laws shall be passed to provide for the incorporation and government of cities and villages; and additional laws may also be passed for the government of municipalities adopting the same; but no such additional law shall become operative in any municipality until it shall have been submitted to the electors thereof, and affirmed by a majority of those voting thereon, under regulations to be established by law."

### Sec 3, Article XVIII.

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

### Sec 4, Article XVIII.

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility."

### Sec 5, Article XVIII.

"Any municipality proceeding to acquire, construct, own, lease or operate a public utility, or to contract with any person or company therefor, shall act by ordinance and no such ordinance shall take effect until after thirty days from its passage. If within said thirty days a petition signed by ten percentum of the electors of the municipality shall be filed with the executive authority thereof demanding a referendum on such ordinance it shall not take effect until submitted to the electors and approved by a majority of those voting thereon. The

submission of any such question shall be governed by all the provisions of §8 of this article as to the submission of the question of choosing a charter commission."

### Sec 7, Article XVIII.

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of §3 of this article, exercise thereunder all powers of local self-government."

### Sec 8, Article XVIII.

"The legislative authority of any city or village may by a two-thirds vote of its members, and upon petition of ten per centum of the electors shall forthwith, provide by ordinance for the submission to the electors, of the question, 'Shall a commission be chosen to frame a charter.' The ordinance providing for the submission of such question shall require that it be submitted to the electors at the next regular municipal election if one shall occur not less than sixty nor more than one hundred and twenty days after its passage; otherwise, it shall provide for the submission of the question at a special election to be called and held within the time aforesaid. The ballot containing such question shall bear no party designation, and provision shall be made thereon for the election from the municipality at large of fifteen electors who shall constitute a commission to frame a charter; provided that a majority of the electors voting on such question shall have voted in the affirmative. Any charter so framed shall be submitted to the electors of the municipality at an election to be held at a time fixed by the charter commission and within one year from the date of its election, provision for which shall be made by the legislative authority of the municipality in so far as not prescribed by general law. Not less than thirty days prior to such election the clerk of the municipality shall mail a copy of the proposed charter to each elector whose name appears upon the poll or registration books of the last regular or general election held therein. If such proposed charter is approved by a majority of the electors voting thereon, it shall become the charter of such municipality at the time fixed therein."

### Sec 12, Article XVIII.

"Any municipality which acquires, constructs or extends any public utility and desires to raise money for such purposes may issue mortgage bonds therefor beyond the general limit of bonded indebtedness

prescribed by law; provided that such mortgage bonds issued beyond the general limit of bonded indebtedness prescribed by law shall not impose any liability upon such municipality but shall be secured only upon the property and revenues of such public utility, including a franchise stating the terms upon which, in case of foreclosure, the purchaser may operate the same, which franchise shall in no case extend for a longer period than twenty years from the date of the sale of such utility and franchise on foreclosure."

### Sec 13, Article XVIII.

"Laws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes, and may require reports from municipalities as to their financial condition and transactions, in such form as may be provided by law, and may provide for the examination of the vouchers, books and accounts of all municipal authorities or of public undertakings conducted by such authorities."

### Sec 14, Article XVIII.

"All elections and submissions of questions provided for in this article shall be conducted by the election authorities prescribed by general law. The percentage of electors required to sign any petition provided for herein shall be based upon the total vote cast at the last preceding general municipal election."

The general rules applicable to the interpretation and construction of such provisions are as follows:

1. In construing a constitution, resort may be had to the well recognized rule of statutory interpretation contained in the maxim "expressio unius est exclusio alterius." The expression of one thing in a constitution may necessarily involve the exclusion of other things not expressed. 8 O. J. 134, 135.

2. Express delegations of political power are made through constitutional provisions, and are necessarily exclusive delegations of power, unless it is expressly provided otherwise. Perrysburg v Ridgeway, 108 Oh St 245, 254. Cincinnati, Wilmington & Zanesville R. R. Co. v Commissioners of Clinton County, 1 Oh St 77.

3. It is a well established principle of constitutional construction that when general and special provisions of a constitution are in conflict the latter control; special provisions relating to a subject will control general provisions in which, but for such special provisions, the subject might be regarded as embraced. 8 O. J. 148.

4. Let the end be legitimate, let it be within the scope of the constitution, and all means which are proper, which are plainly adapted to that end, which are not prohibited but consistent with the letter and spirit of the constitution, are constitutional. McCullough v Maryland, 4 Wheaton, 316. 6 R.C.L. 137.

The interpretation and construction of certain of the constitutional provisions hereinbefore set forth by the courts of this state are as follows:

a. Since the constitution of 1912 became operative all municipalities derive all their 'powers of local self-government' from the constitution direct by virtue of §3, Article XVIII thereof. The above constitutional grant of power is 'self-executing,' in the sense that no legislative action is necessary in order to make it available to the municipality. Perrysburg v Ridgeway, 108 Oh St 245.

b. The exercise of 'all powers of local self-government,' as provided in Article XVIII, §3, is not in any wise dependent upon or conditioned by §7 of Article XVIII which provides that "a municipality may adopt a charter," etc. The grant of power in §3, Article XVIII, is equally to municipalities that do adopt a charter as well as those that do not adopt a charter, the charter being only the mode provided by the constitution for the delegation or distribution of powers already granted in the constitution. Perrysburg v Ridgeway, 108 Oh St 245.

c. The Home Rule provisions of the state constitution are permissive and not mandatory upon the municipalities of this state, and the authority conferred by these provisions may or may not be exercised. Shock v Mahoning Valley Sanitary District, 120 Oh St 449, 453.

d. Under the provisions of §4, Article XVIII, plenary power is conferred upon each and every municipal corporation, whether having a home rule charter or not, to acquire public utilities and as an incident thereto to levy taxes and issue bonds within and subject only to the limitations prescribed in §§12 and 13 of Article XVIII, and such provisions are self-executing. State v Weiler, 101 Oh St 123, 127. And if there is any conflict between such constitutional provisions and the provisions of any statute of the state existing

at the time or enacted since the adoption of **Article XVIII**, such statute must fall. **Ohio River Power Co. v City of Steubenville, 99 Oh St 421.**

Applying the general rules of constitutional construction hereinbefore set forth in paragraphs numbered 1, 2 and 3, to the grants of power to municipalities contained in §§4, 5 and 12, **Article XVIII**, being the sections containing the particular grants of power sought to be exercised by the City of Wapakoneta in the enactment of the ordinance and resolutions hereinbefore referred to, it is apparent that such grants of power being by the provisions of such article expressly made subject to certain restrictions on the manner of their exercise, are not subject to restrictions not expressed; that the express delegation of powers made in said sections are necessarily exclusive delegations of power there being no express provisions to the contrary; that the provisions granting these powers being special provisions relating to a particular subject will control any general provisions in which, but for such provisions, the subject might be regarded as embraced; and consequently that the various grants of power the municipalities contained in said sections of Article XVIII are subject only to the restrictions on the exercise of such powers contained in the provisions of the various sections of said article.

And considering the provisions of **§2 of Article XVIII** conferring power on the legislature to pass laws for the government of cities and villages, in connection with the special grants of power to municipalities contained in §§4, 5 and 12 of said article, in the light of the principle of constitutional construction relating to general and special provisions hereinbefore mentioned in paragraph numbered 3, the special grants of power to municipalities contained in said sections of said article control the general grant of power to the legislature contained in §2 of said article, and in the exercise of such special grants of power by municipalities they are not subject to laws enacted by the legislature pursuant to the general grant of power conferred on the legislature in §2 of said article, such laws applying only to the exercise of powers by municipalities not embraced in such special grants.

And applying the other general rule of construction hereinbefore mentioned in paragraph 4, to the grants of power to municipalities contained in §4, 5 and 12 of Article XVIII, municipalities are authorized under such grants to adopt any means that are proper, and which are plainly adapted to that end, to carry into effect the powers granted, subject only to the restrictions on the exercise thereof contained in said article.

While the constructions of the provisions of Article XVIII referred to in paragraphs hereinbefore designated a, b and c, in terms apply to the provisions of §§3 and 7 of said article, such constructions are equally applicable to the provisions of §§4, 5 and 12 of said article conferring the powers on and determining the procedure of municipalities which are sought to be exercised by the City of Wapakoneta in the enactment of Ordinance No. 1380 and the other ordinances and resolutions hereinbefore referred to, and applying these principles of construction together with the construction placed upon §4 of said article hereinbefore mentioned in the paragraph designated as d, it is obvious that since the constitution of 1912 which included the amendment then made, now designated as Article XVIII, became operative, municipalities derive their power to do the various things specified in §§4, 5 and 12 thereof, direct from the constitution; and that such grants of power are self-executing in the sense that no action by the state legislature is necessary in order to make them available to the municipality; that such grants of power are plenary and the exercise of such powers are not in any way dependent upon or conditioned by §7 of said article; and that the provisions granting such powers are permissive and not mandatory upon the municipalities of this state and the authority conferred by these provisions may or may not be exercised.

Turning to the provisions of §§4, 5 and 12 of said Article XVIII and examining them in the light of the general and special rules of construction hereinbefore referred to, as applied to the subject matter of this action, it will be noted that §4 is a delegation of power to municipalities to acquire, own, lease and operate a plant for the generation and distribution of electric energy to be supplied to the municipality and its inhabitants; and §5 provides the manner in which a municipality may proceed to exercise the power conferred by §4, while §12 is a grant of power to a municipality to raise money, incidental to and for the purpose of the exercise of the power con-

ferred by §4, in the manner and upon the terms in said §12 provided; and that except for said procedural and incidental power provisions there is no limitation or restriction on the power to be exercised under the provisions of §4 except the provisions of §13 of said article that laws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes, etc., and the provisions of §14 of said article as to elections and the submission of questions provided for in said article.

It will also be noted that the only procedural requirements of §5 with reference to the exercise of the power conferred by §4, are: 1. The municipality shall act by ordinance. 2. No such ordinance shall take effect until thirty days after its passage. 3. If within thirty days a petition signed by ten percentum of the electors shall be filed with the executive authority thereof demanding a referendum on such ordinance, it shall not take effect until submitted to the electors and approved by a majority of those voting thereon. 4. The submission of any such question shall be governed by the provisions of §8 of Article XVIII as to the submission of the question of choosing a charter commission.

Under the provisions of §12 the power conferred on municipalities incident to their exercise of the power conferred by §4 to raise money for such purpose by the issuance of mortgage bonds therefor beyond the general limit of bonded indebtedness prescribed by law, is limited only by the provision "that such mortgage bonds issued beyond the general limit of bonded indebtedness prescribed by law shall not impose any liability upon such municipality but shall be secured only upon property and revenues of such public utility, including a franchise stating the terms upon which, in case of foreclosure, the purchaser may operate the same, which franchise shall in no case extend for a longer period than twenty years from the date of the sale of such utility and the franchise on foreclosure."

The word "ordinance" as used in §5, being used in connection with the act of a municipality and not being modified by any other words or phrases, must be considered as being used in the sense it is generally defined, as "a law passed by the governing body of a municipal corporation for the regulation of the affairs of the corporation." Bouvier's Law Dictionary, Rawle's Third Revision, Volume 3, page 2424.

Having considered the constitutional pro-

visions applicable to and illustrative of the powers of a municipality to do the various things sought to be done by the City of Wapakoneta in the enactment of Ordinance No. 1380 and the other ordinances and resolutions, and the construction to be placed upon such provisions, we will proceed to consider the specific objections of the plaintiff to the legality of said ordinance, in the order in which they appear in the petition, as hereinbefore set forth.

1. The first paragraph of plaintiff's objections to the legality of Ordinance No. 1380 is that the ordinance contains more than one subject and that all said subjects are not clearly expressed in the title of said ordinance, which he contends is in violation of the mandatory requirements of §4226 GC.

The ordinance, considered in the light of the foregoing constitutional provisions and the rules of construction applicable thereto, constitutes an exercise by the municipality of Wapakoneta of special plenary powers directly conferred by §§4, 5 and 12 of Article XVIII of the State Constitution on municipalities, in the exercise of which powers the municipality is authorized to adopt any means that are proper, and which are plainly adapted to that end, subject only to the restrictions contained in §§5, 12, 13 and 14 of said article.

The ordinance is a law passed by the governing body of a municipal corporation for the regulation of the affairs of the corporation and in this respect conforms to and complies with the provisions of §5 of said article, that a municipality proceeding to exercise the powers conferred by said section 4 shall act by ordinance.

The ordinance and the several provisions thereof constitute the adoption of proper means to exercise the granted powers.

None of the said restrictions on the exercise of such powers relate to the form, number of subjects that may be embraced in, or the title of the ordinance by which such powers may be exercised, and the municipality in the exercise of such powers being unrestricted in the respects mentioned, the ordinance as enacted constitutes a lawful exercise of such constitutional powers irrespective of whether it contains more than one subject and irrespective of whether all the subjects are clearly expressed in the title.

For the reasons mentioned, the provisions of §4226, GC, have no application to the ordinance in question. And even if such provisions were applicable, the provi-

sions of the ordinance are all germane to the one subject, namely, the construction of a municipally owned electric light and power plant, and being germane to one subject do not violate the provisions of §4226, GC, requiring ordinances to be limited to one subject. 28 O. J. 439, §276. The ordinance does not contain any unrelated subjects and all the subjects covered by the ordinance are clearly expressed in its title. The agreement with the United States government is not a subject of the ordinance, it having been previously authorized by another ordinance, and such reference as is made to it in the ordinance is incidental to the subject matter of the ordinance and is a matter of detail not required to be mentioned in the title to an ordinance.

The first paragraph of plaintiff's objections to the legality of the ordinance is therefore without merit.

2. The second paragraph of plaintiff's objections to the legality of Ordinance No. 1380 is based on the contention that the subject matter of the ordinance is the extension of a public utility, in contradiction to the construction of a public utility and that such extension does not come within the provisions of §4, **Art. XVIII** which grants power to a municipality to acquire, construct, own, lease and operate such public utility. This contention is based on the decision of the Supreme Court in the case of **Shylock v Zanesville, 92 Oh St 375,** the first syllabus of which reads as follows:

"A resolution passed by council of a municipality directing the public service director to employ a competent engineer to prepare plans and specifications for the erection and construction of a mechanical filtration plant for the purification of the water supply of a municipality wherein there was already established and in operation a complete water system, does not come within the terms of §§4 and 5 of Article XVIII of the Constitution in so far as such sections relate to the subject of the acquirement, construction, owning, leasing and operating a public utility by a municipality."

It will be noted that this decision is based on the fact that at the time the resolution was passed by council directing the public service director to employ a competent engineer to prepare plans and specifications for the erection and construction of a municipal filtration plant for the purification of the water supply of the municipality there was already established and in operation in the municipality a complete water system.

As shown by the ordinance in question, the City of Wapakoneta at the time of its adoption owned a distribution and street lighting system and proposes to distribute the electricity produced in the municipal light and power plant, the construction of which is authorized by such ordinance, over such system. If a municipally owned distribution and street lighting system which does not include a plant for the generation of electricity constitutes a complete electric public utility, the provisions of the ordinance in question would come within the purview of said decision.

The phrase "the products or service of which is or is to be supplied to the municipality or its inhabitants," modifies the phrase "any public utility" used in §4 of **Article XVIII.** As applied to an electric public utility it is obvious that the words "the products or service" refer to the generation of electricity, while the words "to be supplied" refers to its distribution, and that within the meaning of said section an electric public utility is not complete unless it comprises both a generating plant and a distributing system.

The distributing and street lighting system therefore does not constitute a complete electric public utility, and the construction provided for in the ordinance does not come within the purview of said decision, but comes within the terms of §4 of said article.

As the ordinance constitutes the exercise of the plenary constitutional powers conferred on municipalities by §§4, 5 and 12 of said article, it is, for the reasons above mentioned, subject only to the provisions as to referendum incorporated in §5 of said article and is not subject to the statutory provisions as to referendum.

3. The third paragraph of the objections of plaintiff to the legality of the ordinance, is that it is not solely a declaration of necessity for the construction of a municipal light and power plant and building as the plaintiff contends is required by the laws of Ohio as the first step in connection with the ultimate construction and operation of such a plant.

This objection is based on the assumption that a municipal program of the character contemplated by said ordinance must be executed and consummated by a series of ordinances each dealing with a separ-

ate necessary phase or step in said municipal program.

As hereinbefore mentioned, the provisions of the ordinance are subject only to the restrictions contained in §§5, 12, 13 and 14 of Article XVIII, none of which restrictions relate to the number of subjects that may be embraced in the ordinance nor require the enactment of more than one ordinance to exercise the powers granted, and where an ordinance as the ordinance in question, constitutes an exercise of the powers granted in §4 and conforms to the provisions of §5, it may provide for any or all incidental matters and things including the exercise of the incidental power conferred by §12 of said article. The ordinance is definite in its terms and provisions and presents a proper logical complete plan and system for carrying into effect the constitutional powers granted and constitutes a proper exercise of such powers.

As Ordinance No. 1380 in and of itself constituted an exercise of the powers conferred by §4 and conformed to and complied with the provisions of §5 of said article it is unnecessary to determine whether the original initiated ordinance complied with and conformed to the provisions of §5 of said article.

The objections contained in the third paragraph are therefore without basis.

4. The fourth paragraph of plaintiff's objections are based on the contention that §§5 and 7 of said Ordinance No. 1380 are unlawful and that the same prescribe a manner for the investment of public funds and securing of the same prohibited by the provisions of §4294 and 4295 GC, and further, that said §5 restricts the expenditures of such funds so deposited, to the items of the aforementioned agreement between the city and the United States of America.

As the City of Wapakoneta in the enactment of this ordinance was exercising plenary powers conferred on it directly by the Constitution, and in the exercise of such powers was subject only to the restrictions provided in §§5, 12, 13 and 14 of Article XVIII, none of which relate to the manner of depositing or securing such funds, its action was not subject to the provisions of general statutes relating to the deposit and security of public funds, and it was authorized to adopt any means that were proper, which were plainly adapted to the end of exercising its constitutional power. While the provisions of the ordinance as to the deposit and security for the funds, vary in minor particulars from the provisions of general statutes which as before stated do not apply to such funds, such ordinance provisions prescribe deposit and security rules constituting a proper exercise of constitutional power.

As set forth in the statement of facts, the provisions of §5 of Ordinance No. 1380 relates to the deposit of the proceeds of the sale of bonds authorized by the ordinance, in a special account or accounts to be used only for the purpose of paying for the improvement to the electric system of the city and all things necessary or incidental thereto, in accordance with the terms of the agreement between the city and the United States government. Since the enactment of Ordinance No. 1380, the agreement between the city and the United States government referred to therein which was originally authorized by Ordinance No. 1344 adopted prior to the adoption of Ordinance No. 1380, has pursuant to Ordinance No. 1388, adopted subsequent to the adoption of Ordinance No. 1380, been modified so as to eliminate the provisions of paragraphs 13 and 14 of the original agreement which the plaintiff claims constitute unlawful delegations of power by the city.

It will be noted on examination of paragraphs 13 and 14 of the original agreement set forth in the statement of facts, that some of the provisions complained of relate to the incorporation in the contracts for the construction of the public utility, of certain rules and regulations as to wages and hours of labor, while others relate to certain powers of approval and supervision to be vested in the United States government. The provisions fixing the rates of wages and hours of labor prior to the letting of the construction contracts, are unquestionably a proper exercise of the plenary constitutional power conferred on the city. The other provisions relating to powers of approval and supervision are of such nature that they may or may not be exercised by the United States government in the actual execution of the agreement, or if exercised may or may not conflict with the exercise of powers by the municipality which it is not authorized to delegate.

Whether the provisions last referred to constitute unlawful delegation of power by the city to the United States government, it is unnecessary to determine as the city by the adoption of Ordinance No. 1388 authorizing the modification of said agreement and by causing its duly authorized

officers to enter into such modified agreement on behalf of the city in which the provisions of paragraphs 13 and 14 of the original agreement complained of by plaintiff, have been eliminated, has disclaimed any intention to exercise any of such powers claimed to have been unlawfully delegated, and consequently there is no basis at the present time for the injunctive relief asked for by plaintiff. In this situation it is only if and when there is an attempt to exercise such powers claimed to have been illegally delegated, that injunction might lie.

The objections of the plaintiff contained in the fourth paragraph are therefore without basis.

5. The fifth paragraph of plaintiff's objections to the legality of Ordinance No. 1380 is to the effect that the provisions of §13 of the ordinance are contrary to the laws of the State of Ohio relating to the granting of the franchise and the fixing of rates of public utility companies.

It is contended by the plaintiff that this section vests in the purchaser at foreclosure sale of the property of the public utility authorized to be mortgaged to provide money for the construction of the public utility pursuant to the terms of the ordinance, which purchaser under the provisions of said section may be "any person, firm, association of persons or corporation," (a) a franchise for the term of twenty years from the date of such sale, and, (b) the right to charge rates for twelve years sufficient to enable such holder "to earn, after payment of operating expenses, maintenance and a reasonable allowance for depreciation, a net return of eight per cent upon the reproduction cost of said utility after making reasonable allowance for depreciation of said utility since the time of its installation," are violative of the provisions of §614-73 GC, which, among other things, provides that "No franchise * * * shall be hereafter granted or transferred to any corporation not duly incorporated under the laws of Ohio," and of §§3982 and 3983 GC vesting in municipalities the right to determine utility rates.

It will be noted that under the provisions of §12 of Article XVIII, a municipality is authorized to issue bonds beyond the general limit of bonded indebtedness prescribed by law "secured only upon property and revenues of such public utility, including a franchise stating the terms upon which, in case of foreclosure, the purchaser may operate the same, which franchise shall in no case extend for a period longer than twenty years from the date of the sale of such utility and franchise on foreclosure."

This constitutional provision conferred plenary power on city to make the provisions complained of in the ordinance, and under the rules of construction and for the reasons hereinbefore set forth, the statutes mentioned have no application to the exercise of this power by the city and to such provisions, and such provisions are valid notwithstanding the provisions of the sections of the General Code mentioned. **Ohio River Power Company v City of Steubenville, 99 Oh St 421. City of Lima v Public Utilities Commission, 100 Oh St 416.**

6. The sixth paragraph of plaintiff's objections is to the effect that Ordinance No. 1380 is unlawful and that the same commits the city to comply with an agreement with the Federal Administration of Public Works wherein the city unlawfully delegates power vested in and necessary to be exercised by it.

This objection is based on the provisions of paragraphs 13 and 14 of the original agreement, entered into between the city and the United States government referred to in said ordinance, which have been heretofore discussed in connection with paragraph 4 of plaintiff's objections, and for the reasons mentioned in such discussion, this objection is also without merit.

All of plaintiff's objections to the legality of the ordinance being without merit, a judgment will be entered in favor of the defendants at the costs of plaintiff, and the temporary restraining order heretofore issued herein will be dissolved.

KLINGER, PJ, and CROW, J, concur.