For these reasons, I dissent from the conclusion reached by my associates.

VOLLMER, A TAXPAYER, APPELLANT, *v.* VILLAGE OF
AMHERST ET AL., APPELLEES.

(Decided June 7, 1940.)

*Mr. G. A. Resek, Messrs. Welles, Kelsey, Cobourn & Harrington* and *Messrs. Hartshorn, Thomas & Abele,* for appellant.

*Mr. J. J. Smythe,* village solicitor, and *Mr. Milton Friedman,* for appellees Village of Amherst and others.

*Mr. Thomas M. Miller,* for appellees Van Lahr, Doll & Isphording, Inc., Provident Savings Bank & Trust Co., as trustees, and Herold Northcutt, agent.

*Mr. Kenneth B. Johnston,* for appellee Ohio National Bank of Columbus.

*Mr. Thomas J. Herbert,* attorney general, and *Mr. Robert J. Odell,* for appellee Retirement Board of the State Teachers Retirement System.

STEVENS, J. The action in the Court of Common Pleas challenged the validity of an issue of $80,000 mortgage revenue bonds issued by the village of Amherst, Ohio, to in part finance the construction of an electric generating plant intended to furnish electric energy to the village and its inhabitants. For some years past the village has owned and operated its own electric distribution system, over which system it has distributed electric energy purchased from The Ohio Public Service Company.

In September of 1938, the board of trustees of public affairs of the village of Amherst entered into negotiations with the Federal Emergency Administration of Public Works, seeking to procure a grant of part of the estimated cost of said generating plant from said administration. In October, 1938, said administration

offered to assist in financing said electric generating plant by making a grant of 45 per cent of the cost thereof—not to exceed $62,250, however—which offer was accepted by the council of the village by its resolution of November 3, 1938.

On November 15, 1938, ordinance No. B-209 was passed by the council of said village, which ordinance declared the necessity of constructing an electric generating plant, and provided for the financing thereof by utilizing the grant of the administration aforesaid, and issuing mortgage revenue bonds under the provisions of Section 12 of Article XVIII of the Constitution of Ohio for the balance.

Referendum petition having been filed to ordinance No. B-209, an election was held "in accordance with the provisions of Sections 4, 5, 8, 12 and 14 of Article XVIII of the Constitution of the state of Ohio," on February 21, 1939, at which election 705 votes were cast for the ordinance, and 457 against.

On July 8, 1939, the council of the village of Amherst passed ordinance No. B-230, as an emergency ordinance, under the terms of which, bonds in the amount of $80,000 were authorized; those bonds were immediately issued, and sold to Van Lahr, Doll & Isphording, Inc., prior to the commencement of the present action.

On July 24, 1939, this action was commenced in the Court of Common Pleas by plaintiff, an employee of The Ohio Public Service Company, in his capacity as a taxpayer, after request had been made upon the village solicitor to institute the action, and the request had been refused.

Hearing in the Court of Common Pleas resulted in the entry of a decree dismissing plaintiff's petition.

Appeal on questions of law and fact brings the cause before this court.

Three questions are presented by the appeal:

"I.   Whether ordinance No. B-230, the mortgage

trust indenture, and the bonds executed and issued under authority thereof, violate the Constitution.

"II. Whether mortgage bonds issued under authority of the Constitution for the acquisition, construction or extension of a municipal utility are subject to the provisions of the Uniform Bond Act.

"III. If so, does an irregularity in the issuance of such bonds affect the rights of a holder for value?"

There is no dispute in this case as to the facts, the case having been submitted to the Court of Common Pleas upon an agreed statement of facts, and being so submitted to this court, with the addition of a supplementary agreed statement of facts filed here.

It is urged by appellant that, by the passage of ordinance No. B-230, the execution of the mortgage trust indenture thereunder, and the execution and sale of the bonds in question, the village has violated the provisions of Section 12, Article XVIII, and Section 6, Article VIII, of the Constitution of Ohio, because it has included, within the terms of the mortgage, property previously owned and not acquired from the proceeds of the bonds sold, and further because it has pledged the revenues arising from the operation of the presently-owned distribution system for the payment of the bonds issued and sold under said mortgage.

A very able and comprehensive discussion of the rules to be applied in construing the various sections of Article XVIII of the Ohio Constitution, and of the import of the entire article itself, is contained in the opinion of Guernsey, J., in the case of *Priest* v. *City of Wapakoneta*, 24 Ohio Law Abs., 214. With the rules announced, the construction indicated, and the conclusions there reached, the members of this court are in entire accord.

It is stated (p. 221):

"d. Under the provisions of Section 4, Article XVIII, plenary power is conferred upon each and every municipal corporation, whether having a home

rule charter or not, to acquire public utilities and as an incident thereto to levy taxes and issue bonds within and subject only to the limitations prescribed in Sections 12 and 13 of Article XVIII, and such provisions are self-executing. *State* v. *Weiler*, 101 Ohio St., 123, 127. And if there is any conflict between such constitutional provisions and the provisions of any statute of the state existing at the time or enacted since the adoption of Article XVIII, such statute must fall. *Ohio River Power Co.* v. *City of Steubenville*, 99 Ohio St., 421."

Do the provisions of Article XVIII, or of Section 6, Article VIII, prohibit the inclusion in the mortgage of an electric distribution system not acquired from the proceeds arising from the sale of the bonds, or preclude the pledging of the revenues derived from the operation of the entire utility to the payment of the bonds?

Section 4, Article XVIII, provides:

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the products or service of which is or is to be applied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility."

Section 12, Article XVIII, provides as follows:

"Any municipality which acquires, constructs or extends any public utility and desires to raise money for such purposes may issue mortgage bonds therefor beyond the general limit of bonded indebtedness prescribed by law; provided that such mortgage bonds issued beyond the general limit of bonded indebtedness prescribed by law shall not impose any liability upon such municipality but shall be secured only upon the

property and revenues of such public utility, including a franchise stating the terms upon which, in case of foreclosure, the purchaser may operate the same, which franchise shall in no case extend for a longer period than twenty years from the date of the sale of such utility and franchise on foreclosure.''

''The phrase 'the products or service of which is or is to be supplied to the municipality or its inhabitants,' modifies the phrase 'any public utility' used in Section 4 of Article XVIII. As applied to an electric public utility it is obvious that the words 'the products or service' refer to the generation of electricity, while the words 'to be supplied' refers to its distribution, and that within the meaning of said section an electric public utility is not complete unless it comprises both a generating plant and a distributing system.'' *Priest* v. *City of Wapakoneta, supra,* at p. 224.

What, then, is meant by the words contained in Section 12, Article XVIII, ''provided that such mortgage bonds * * * shall be secured only upon the property and revenues of *such* public utility''? (Italics ours.)

Considered in connection with the general plan evidenced by the constitutional provisions on this subject adopted in 1912, the word ''such'' as used indicates to the members of this court an intention by the framers of the provision, and of the people in adopting it, to permit the inclusion of the entire utility, including the generating plant, the distribution system, and the revenues arising from both, in the mortgage securing the bonds.

It is urged, however, that especially under the holdings in *Village of Brewster* v. *Hill,* 128 Ohio St., 343, 190 N. E., 766, and *State, ex rel. Pub. Inst. Bldg. Auth.,* v. *Griffith, Secy. of State,* 135 Ohio St., 604, 22 N. E. (2d), 200, the village was loaning its credit, contrary to Section 6, Article VIII, when it provided for the inclusion of the distribution system, and the proceeds from the generating and distribution systems, in the

mortgage securing the bond issue.

We are of the opinion that the case of *State, ex rel.,* v. *Griffith, supra,* has no application whatsoever to the situation here presented, and that the *Village of Brewster* v. *Hill case, supra* (which we unanimously believe to be wrongly decided), is so dissimilar as to facts, that it may not be considered to be controlling in this case, which involves a proceeding under a different constitutional provision. However, if it should be concluded that Section 6, Article VIII, a general provision of the Constitution, has any application to this situation, then we believe that, in so far as it conflicts, if in any manner it does so conflict, with the provisions of Article XVIII, a special provision, it is controlled by Article XVIII.

"It is a well-established principle of constitutional construction that when general and special provisions of a Constitution are in conflict, the latter control; special provisions relating to a subject will control general provisions in which, but for such special provisions, the subject might be regarded as embraced." 8 Ohio Jurisprudence, Constitutional Law, Section 48 (Citing *Akron* v. *Roth,* 88 Ohio St., 456, and *Priest* v. *City of Wapakoneta, supra).*

It has been stated that where a court is called upon to consider a constitutional amendment, which amendment is the latest expression by the voters upon the subject, all earlier constitutional provisions inconsistent therewith must yield to such latest expression of the electors. *State, ex rel. Young,* v. *Cox, Gov.,* 90 Ohio St., 219, 107 N. E., 517.

We hold that, so far as the presently-owned electric distribution system, and the proceeds arising from its operation, are concerned, there is no inhibition contained in the provisions of Article VIII or the provisions of Article XVIII of the Ohio Constitution which disables the village from including that system and the

proceeds from its operation in the mortgage securing the bond issue in question.

It is next claimed that provisions of ordinance No. B-230 and of the mortgage indenture, in effect create liability on the part of the village of Amherst to pay out of general tax revenues, because:

1. The ordinance and mortgage require the village to pay for current used.

2. The ordinance and mortgage require the village to maintain insurance upon the utility.

3. The ordinance and mortgage require the village to restore the plant in the event of destruction without regard to the existence of insurance funds.

4. The requirement as to furnishing detailed reports of operations of the system to the bondholders and permitting them to inspect the books, constitute a grant of partial control over the village property to the bondholders.

5. The village specifically covenants to pay all the expenses of the trustee.

As to the first claim, we find no merit therein. There is no constitutional or statutory restraint upon the right of the village to purchase electric energy from any source, so far as we can perceive from an examination of the Constitution and statutes. If it may purchase from others, why may it not, in its governmental capacity, purchase from itself acting in its proprietary capacity, the energy which it requires? That it can do so with entire propriety has been held in *Uhler* v. *City of Olympia*, 87 Wash., 1, 151 P., 117.

As to claims 2, 3, and 5, nowhere in the ordinance or mortgage is it *expressly* provided that the village shall, out of its *general* revenues, pay for insurance, restore the plant in event of its destruction without regard to insurance funds, or pay the expenses of the trustee. It is an entirely justifiable conclusion under the wording of the ordinance and mortgage to say that those documents contemplate the payment of those items only

from the proceeds of the operation of the utility, and not from general funds. See *Pathe* v. *Donaldson, Mayor,* 29 Ohio App., 171, at p. 173, 163 N. E., 204.

As to claim 4, we are not in accord with this contention. There is nothing before us to indicate that the provisions with reference to furnishing reports of operations and permitting inspection of the books of the property, constitute a grant of partial control over the village property. Such a provision under the circumstances here present, it seems to us, is an entirely proper one, so far as reports and inspection of books is concerned, but we find no grant of a right of control of the utility except in case of default under the provisions of the mortgage.

We hold that nothing in connection with the foregoing five claims invalidates the bonds in question.

The next claim of plaintiff is that ordinance No. B-230 was passed as an emergency measure, and that such passage contravenes Section 5, Article XVIII, and renders the bonds invalid.

Section 5, Article XVIII, of the Constitution of Ohio provides:

"Any municipality proceeding to acquire, construct, own, lease or operate a public utility, * * * shall act by ordinance and no such ordinance shall take effect until after thirty days from its passage. * * *"

In this proceeding the village acted by ordinance, and upon the initial ordinance a referendum was had, which resulted favorably to the ordinance. We are of the opinion that ordinance No. B-209, the ordinance of necessity, contained all the information necessary to acquaint the voters with the questions to be balloted upon, when the referendum thereupon was had, and that it was the only ordinance subject to referendum.

Later ordinances incidental to and in furtherance of the project were not subject to referendum under the provisions of Section 5 of Article XVIII of the Ohio Constitution. *State, ex rel. Didelius, City Solicitor,* v.

*City Comm. of City of Sandusky,* 131 Ohio St., 356, 2 N. E. (2d), 862.

Hence, the passage of ordinance No. B-230 as an emergency measure did not violate the Constitution, as claimed, and did not render the bonds invalid.

The next point urged presents the question as to whether the provisions of the Uniform Bond Act apply to bonds issued under the provisions of Section 12, Article XVIII, of the Ohio Constitution.

It might be here observed that it does not appear from the agreed statement of facts filed herein whether the bonds issued by the village of Amherst were within or without the statutory debt limit of the village. If the bonds were within the debt limit, and hence general obligations of the village payable from taxes, there might be some force to the plaintiff's argument in this connection. If they were without the debt limitation, and constitute only a liability upon the utility itself, and upon the proceeds from its operation, as we believe to be the case here, then in our opinion this argument loses its force.

Section 13, Article XVIII, provides:

"Laws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes * * *."

This section, as we understand it, confers upon the Legislature the right to pass laws limiting the amount of taxes which may be levied and debts which may be incurred by the municipality for local purposes, and has no application to liability arising by virtue of proceedings under Section 12 of Article XVIII of the Constitution. *State, ex rel. City of Toledo,* v. *Weiler,* 101 Ohio St., 123, 128 N. E., 88.

There is here a failure of proof to show that these bonds were required to be issued in such manner as to bring them within the provisions of the Uniform Bond Act.

However, we hold that these bonds, being mortgage

revenue bonds issued under Section 12 of Article XVIII of the Ohio Constitution, are not amenable to the provisions of the Uniform Bond Act, and that the failure to sell them at public sale as required by that act does not invalidate said bonds. *Priest* v. *City of Wapakoneta, supra; State, ex rel.*, v. *Weiler, supra.*

There is one other question which merits consideration, and that is whether any irregularity in the issuance of said bonds can affect the rights of *bona fide* purchasers without notice.

The bonds as issued contained, among others, the following recital:

"It is hereby certified and recited that all acts, conditions and things necessary to be done precedent to and in the issuing of these bonds in order to make them legal, valid and binding obligations of the village in accordance with their terms, and in authorizing the execution and delivery of the indenture securing these bonds, have been done and performed and have happened in regular and due form as required by law; that the fiscal officer of the village of Amherst has, on its behalf, received payment in full for said bonds, and that said bonds are not governed by or subject to any constitutional, statutory or other limitation upon the amount of the bonded indebtedness prescribed by law for the village."

Under the terms of the foregoing, the village itself would be estopped to defend against the obligation of the bond, or from alleging that the bonds were invalid because certain steps required by law to be taken had not been taken.

*State, ex rel. The Alden Corp.,* v. *Village of Solon,* 132 Ohio St., 362, 7 N. E. (2d), 550.

The right of a taxpayer, suing on behalf of the village, can rise no higher than those of the village itself, nor can he assert a better claim for the village than it could assert in its own behalf.

*Fahey* v. *Town of City of Bloomington,* 268 Ill., 386,

109 N. E., 292; *Warfield* v. *Anglo & London & Paris National Bank,* 202 Cal., 345, 260 P., 881; *New Orleans* v. *New Orleans Water Works Co.,* 142 U. S., 79, 35 L. Ed., 943, 12 S. Ct., 142.

By reason of the foregoing, it is the opinion of this court that the plaintiff is not entitled to the relief which he seeks, and his petition is accordingly dismissed at his costs.

*Petition dismissed.*

WASHBURN, P. J., and DOYLE, J., concur.