140

BILLINGTON, APPELLEE, *v.* COTNER, CLERK, ET AL., APPELLEES;
CITY OF CLEVELAND, APPELLANT.
THE STATE, EX REL. BRENKUS, *v.* BROWN, SECY. OF
STATE, ET AL.
THE STATE, EX REL. JAMES, ET AL., APPELLANTS, *v.* COTNER,
CLERK, ET AL., APPELLEES.

(Nos. 70-654, 70-644 and 70-653—Decided
February 24, 1971.)

144

Mr. *Fred J. Ball*, for appellant Glenn E. Billington in case No. 70-654.

Mr. *Michael A. Sweeney*, for appellee Mercedes Cotner, Clerk of Council, in case Nos. 70-653 and 70-654.

Mr. *John T. Corrigan*, prosecuting attorney, and Mr. *John L. Dowling*, for appellee Board of Elections in case Nos. 70-653 and 70-654.

Mr. *Lucien Karlovec, Jr.*, for appellee Cadillac Press in case Nos. 70-653 and 70-654.

Mr. *Clarence L. James, Jr.*, director of law, Mr. *John F. Dolan, Mr. William D. Moore* and Mr. *Jay L. Loeb*, for appellants in case Nos. 70-653 and 70-654.

Messrs. *Jones, Day, Cockley & Reavis* and Mr. *George J. Moscarino*, for relator in case No. 70-644.

Mr. *Paul W. Brown*, attorney general, Mr. *F. Richard Heath, Mr. John T. Corrigan*, prosecuting attorney, Mr. *John L. Dowling* and Mr. *Jeffrey L. Kocian*, for respondents in case No. 70-644.

Mr. *Clarence L. James, Jr.*, director of law, Mr. *John F. Dolan, Mr. William D. Moore* and Mr. *Jay L. Loeb*, for appellants in case No. 70-653.

DUNCAN, J. What is the effect of the Mayor's veto of Ordinance No. 1918-69? Although this question was paramount in appellant Billington's contentions before the Court of Common Pleas, he does not raise that question in this court. Appellees, however, refer to it in brief and argument. In order to make our decision relevant to the entire controversy, we deal with that issue.

Section 9, Article XVIII of the Ohio Constitution, provides that an amendment to a charter of a municipality

"may be submitted to the electors of a municipality by a two-thirds vote of the legislative authority thereof, and, upon petitions signed by ten per centum of the electors of the municipality setting forth any such proposed amendment, shall be submitted by such legislative authority." The manifest object of this constitutional provision is to provide the procedure for the submission of a charter amendment to electors. The requirements are clear and complete, and are not to be added to or subtracted from.

Section 200 of the Charter of the city of Cleveland contains substantially the same language regarding charter amendments as that set forth in Sections 8 and 9 of Article XVIII of the Ohio Constitution.

While we are aware that this precise question concerning a charter amendment is a matter of first impression, we find *State, ex rel. Foreman,* v. *Brown* (1967), 10 Ohio St. 2d 139, instructive. This court there held that, pursuant to Section 1 of Article XVI of the Ohio Constitution, the General Assembly may authorize by a joint resolution, without enacting a statute, a special election on a certain day for the submission of a constitutional amendment to the electors. In distinguishing the role of the General Assembly in proposing a constitutional amendment from that in the enactment of a statute, Chief Justice Taft stated, at page 141:

"These words clearly authorize the General Assembly to prescribe that an amendment to the Constitution, proposed by the General Assembly pursuant to that section, be submitted at a special election on a certain date.

"Unlike in many other parts of the Ohio Constitution, Section 1 of Article XVI does not require that this action be 'by law,' *i. e.,* by enactment of a statute. * * *"

Comparing Section 1 of Article XVI with Section 9 of Article XVIII, we discern no reason for a different rule merely because the former provides for amendments to the Ohio Constitution, and the latter to city charter amendments. An orderly society remains that way by the ready availability of an unencumbered procedure for the sub-

mission of basic governmental changes to the people. As such, our Constitution wisely provides a procedure different from that used by elected representative lawmakers in enacting laws. See *State, ex rel. Werner,* v. *Koontz* (1950), 153 Ohio St. 325.

Our position on this issue, therefore, renders nugatory the language of Ordinance No. 1918-69 requiring its submission to and "approval by the Mayor." The veto procedure is a hallmark of the lawmaking process, but a mayor may not interpose executive power in the procedure whereby a charter amendment is submitted to the electors. See *Payne* v. *State, ex rel. Guitteau* (1928), 32 Ohio App. 189.

Does Ordinance No. 1918-69, as authenticated and journalized, satisfy the requirements of law for the submission of the proposed charter amendment to the electors of the city of Cleveland?

Section 8 of Article XVIII of the Ohio Constitution provides that "the ordinance providing for the submission of such question shall require that it be submitted to the electors at the next regular municipal election if one shall occur not less than sixty nor more than one hundred and twenty days after its passage; otherwise it *shall* provide for the submission of the question at a special election to be called and held within the time aforesaid."

Pursuant to Section 1, Article XVII of the Ohio Constitution, a regular municipal election is held only in the odd numbered years. Obviously, the proposed amendment could be lawfully submitted to the electors in an even numbered year only upon the designation of a special election.

It is argued that the spaces for dates in the ordinance were left blank because of administrative inadvertence. Strangely, Ordinance No. 1918-69, in Section 1, provides for a "*special* election to be held at the usual places of voting on............of * * * [the] proposed amendment"; however, Section 2 of the ordinance additionally provides for a "*special* election to be held at the usual places of voting

on Tuesday............which is also the time of voting at the *regular* municipal election." (Emphasis added.)

We are urged, first, to afford a legal presumption of validity that is generally extended to legislation, and hold that, since November 3, 1970, is the date of the only regular election within the constitutionally provided time limits for the submission of this proposed amendment, November 3, 1970, was the date intended. There are many cases which require courts to presume the validity of regular enactments of legislative bodies. *E.g., Village of Willard* v. *McElligott* (1929), 121 Ohio St. 456; *Xenia* v. *Schmidt* (1920), 101 Ohio St. 437; *Miller* v. *State* (1854), 3 Ohio St. 475. None of those cases support the use of such a presumption as a vehicle to supply missing mandatory requirements delineated by the Constitution. In our view, the requirements of Section 8, Article XVIII of the Ohio Constitution, are obviously mandatory and are applicable to that charter amendment involved here.

This section requires that an ordinance proposing a charter amendment not submitted to the electors at a regular municipal election shall be submitted at a special election *called*.

Ordinance 1918-69 does not *call* for a special election on a day certain. Our review of the evidence does not reveal that the city council in any other official action *called* for a special election on *this* charter amendment on a date certain.

In order to call a special election, the legislative authority of a city must establish a specific date. The failure to do so prohibits the effective submission of the proposed amendment to the electors.

To judicially supply a date for the special election, when none was included in the ordinance proposing the amendment or any other ordinance or action specifically calling a special election of the issue, would connote a view by the court that the calling and date of a special election is perfunctory. This cannot be, and is not, the law. The date of a special election is of crucial importance to public officials who must notify the electors, as required by the Con-

stitution,[3] and arrange for the election. There is no provision of law under which a date for a special election can be determined if it is not established by a city council.

Secondly, it is suggested that, by taking judicial notice of other ordinances submitting charter amendments which were pasesd by city council and provided for special elections on November 3, 1970, there is a basis for the court to discern that council intended to set that same date for a special election on Ordinance No. 1918-69.

We have not discovered any authority for resorting to ordinances providing for other special elections as a means of evidencing compliance with a mandatory constitutional requirement; nor do we favor such a suggestion. It must be kept in mind that we are not seeking to discover the legislative intent of Council in enacting the ordinance, but to determine whether the requirements of the Constitution have been met.

This court has, on prior occasions, found the result of an election to be void because the election was held on an unauthorized date. In the case of *State, ex rel. McNeal,* v. *Dombaugh* (1870), 20 Ohio St. 167, it was held, in paragraph one of the syllabus:

"The power to fix the times of holding elections * * * is vested by the constitution in the legislature, and when a time has been so fixed by that body, any election * * * held at a different time is unauthorized and void."

See, also, *State, ex rel. Linn,* v. *Brown* (1861), 12 Ohio St. 614; and *State, ex rel. Maffett,* v. *Chase* (1857), 7 Ohio St. 372.

Is parol evidence admissible to show that the City Council of Cleveland acted other than as reflected in its journal?

Section 29, Charter of the city of Cleveland, provides that the Council shall keep a journal of its proceedings. Section 48 of the Charter requires that "every ordinance or resolution upon its final passage shall be recorded in a book kept for that purpose and shall be authenticated by

[3]Section 8, Article XVIII, Ohio Constitution.

the signature of the presiding officer and clerk of the council.''

Well chronicled in Ohio law, and in that of many other jurisdictions,[4] is the rule that parol evidence is not admissible to impeach a legislative journal. In *State, ex rel. Herron,* v. *Smith* (1886), 44 Ohio St. 348, this court held that parol evidence to the effect that certain members of the House of Representatives were improperly seated after an election will not be admitted to impeach an act properly passed and recorded on the Journals.

At page 362, Judge Minshall said:

''* * * out of a multitude of citations, not one is found in which any court has assumed to go beyond the proceedings of the Legislature, as recorded in the journals required to be kept in each of its branches, on the question whether a law had been adopted. * * * Imperative reasons of public policy require that the authenticity of laws should rest upon public memorials of the most permanent character. They should be public, because all are required to conform to them; they should be permanent, that rights acquired today upon the faith of what has been declared to be law shall not be destroyed tomorrow, or at some remote period of time, by facts resting only in the memory of individuals.''

In *Wrede* v. *Richardson* (1907), 77 Ohio St. 182, the Governor's clerk entered in the record which, by statute, the Governor was required to keep, as facts, that a certain bill was presented to the Governor, and, after the lapse of ten days, was filed with Secretary of State. Plaintiffs were not allowed to impeach the law by showing that the Governor was sick and did not actually see the bill.

[4]For similar rulings in other jurisdictions see: *Bates* v. *Jenkins* (Ky. 1959), 322 S. W. 2d 475; *New England Box Co.* v. *C & R Const. Co.* (1943), 313 Mass. 696, 49 N. E. 2d 121; *Barrett* v. *Hand* (1954), 158 Neb. 273, 63 N. W. 2d 185; *Ex Parte Young* (1908), 154 Cal. 317, 97 P. 822; *Byrd* v. *State, ex rel. Colquett* (1924), 212 Ala. 266, 102 So. 223; *State, ex rel. Heck's Discount Centers,* v. *Winters* (1963), 147 W. Va. 861, 132 S. E. 2d 374; *People, ex rel. Coutrakon,* v. *Kohr* (1956), 9 Ill. 2d 539, 138 N. E. 2d 471; *Integration of Bar Case* (1943), 244 Wis. 8, 11 N. W. 2d 604.

In paragraph two of the syllabus in *Wrede,* the court held: "The enactment of an officially promulgated statute can not be impeached by parole evidence."

At page 211, it was stated:

"Here a record of fact was made, and this in accordance with not only the requirements of the statute and the custom prevailing in the Governor's office, but in accordance with the policy long established and firmly adhered to requiring that the enactment of officially published statutes shall be impeached only by the records of their enactment."

The court, in its opinion, at page 212, also stated:

"The Secretary of State is the official custodian of our statute laws, and we have long been familiar with the rule founded upon statutes that his certificate is conclusive as to what the law is. Obviously the recognition of the doctrine advanced by counsel for the plaintiff would involve the repudiation of that rule; and, since no one may be required to challenge the validity of a statute until it is invoked against him, there would arise a condition of endless doubt respecting a subject upon which every consideration requires that there should be immediate and enduring certainty."

The Charter of the city of Cleveland requires that the Journal be authenticated by the presiding officer (Section 29, *supra*). Commenting on the authentication and journalization process in the case of *State* v. *Kiesewetter* (1887), 45 Ohio St. 254, Judge Spear stated, at page 258:

"* * * The signatures of the presiding officers, therefore, furnish the evidence that that which the journals show, by title and number, passed the General Assembly, is this identical measure. The act thus authenticated is to be given the force of law, is to be treated as such, and to prove itself upon inspection; and this verification by the officers designated by the Constitution is the conclusive evidence to the Secretary of State that the act so signed is a law, and entitled to be filed as such in the office of that officer, and, under his direction to be published, duly certified by him, for the information and guidance of all the

people of the state. The signing is, therefore, for the benefit of the people in their examination to ascertain what is, and what is not law."

We reaffirm the value of that principle, believing it to be as salutary now as then.

Furthermore, a clerk of council has no authority to certify to a board of elections an ordinance enacted by that council in a form different from that authenticated in the council's journal. See *Beck* v. *Cincinnati* (1955), 162 Ohio St. 473.

In case No. 654, the court erred in admitting in evidence the testimony of the President of Council.

Even if admissible, the parol evidence admitted is insufficient to properly evidence council's action on a matter before it. Section 32, Charter of the city of Cleveland, provides that: "The vote upon passage of all ordinances, and upon the adoption of such resolutions as the council by its rules shall prescribe, shall be taken by 'yeas' and 'nays' and entered upon the journal."

The journal not only fails to show an amendment to Ordinance No. 1918-68, but the parol testimony fails to meet the standard prescribed by the city charter because of the absence of any testimony concerning the 'yeas' and 'nays' on the amendment orally mentioned at trial.

It might be said that our decision herein is technical. We take notice that, after these cases were filed and during their litigation, the proposed amendment was voted upon by the electors of Cleveland, the ballots were counted, and the result of the election, passage of the proposed amendment, was certified. Decisions of courts which are inapposite to the expressed will of the electorate ring of harshness. However, such circumstance must not intimidate a court in its dedication to the application of law. Every attempt should be made to preserve the validity of the results of an election. The failure of city council to designate the date of a special election, however, is a gross omission, not a trivial one.

In case No. 70-654, the motion to certify is allowed,

and the judgment of the Court of Appeals is reversed. The court holds that the plaintiff therein was entitled to the relief prayed for in his action, but, because the election has been held and the results certified, we limit our relief granted to holding that the election on the proposed amendment contained in Ordinance No. 1918-69, and the results thereof, are a nullity and without effect.

Since our decision in case No. 70-654 renders moot the questions raised in case Nos. 70-653 and 70-644, in case No. 70-653 the judgment of the Court of Appeals is affirmed, and in case No. 70-644 the action is dismissed.

*Judgments accordingly.*

O'NEILL, C. J., STERN and LEACH, JJ., concur.
SCHNEIDER, HERBERT and CORRIGAN, JJ., dissent.

SCHNEIDER, J., dissenting. The crux of the majority opinion seems to be that the "failure of city council to designate the date of a special election . . . [was] a gross omission, not a trivial one."

I agree that the omission was not trivial, but I do not agree that it was so gross as to require the result reached by the court.

The omission would have excused the clerk of council from certifying the action of council to the election officials, or the latter from activating the election machinery as to the proposed amendment.

This is not a case of "impeaching" the record of council. No one denies that council never designated the date for the election. Thus, there was no attempt by the lower courts in case No. 70-654 to alter that which council did.

Moreover, no one denies that the will of the city council was to submit the proposed charter amendment to the electorate. The courts below merely gave effect to that will.

HERBERT and CORRIGAN, JJ., concur in the foregoing dissenting opinion.