[THE STATE, EX REL.] CITY OF BEDFORD, APPELLANT, *v.* BOARD
OF ELECTIONS OF CUYAHOGA COUNTY ET AL., APPELLEES.

[Cite as *State, ex rel. Bedford, v. Cuyahoga Cty.
Bd. of Elections* (1991), 62 Ohio St.3d 17.]

(No. 90–2123—Submitted July 31, 1991—Decided September 25, 1991.)

*Calfee, Halter & Griswold, Mark I. Wallach, John E. Gotherman* and *Smith R. Brittingham IV*, for appellant.

*Stephanie Tubbs Jones*, Prosecuting Attorney, and *Michael P. Butler*, for appellee board of elections.

*Lee I. Fisher*, Attorney General, and *Catherine M. Cola*, for appellee Secretary of State.

---

*Per Curiam.* For a writ of mandamus to issue, Bedford must have a clear legal right to the performance of a clear legal duty and no adequate remedy in the ordinary course of law. *State, ex rel. Brookpark Entertainment, Inc., v. Cuyahoga Cty. Bd. of Elections* (1991), 60 Ohio St.3d 44, 45–46, 573 N.E.2d 596, 598–599. For the reasons that follow, we hold that Bedford is entitled, by virtue of the city's powers of local self-government, to call the advisory election in dispute, that the board of elections and Secretary of State therefore have a clear legal duty to conduct the election, and that Bedford is without an adequate legal alternative to the writ. Accordingly, we reverse and grant the writ.

## I

### Clear Right and Clear Duty

The board of elections and Secretary of State implicitly agree that they have a duty to conduct elections that Bedford has the power to authorize. Thus, to establish that the city does not have the power to authorize this advisory election, these election authorities principally rely, as the court of appeals did, on *State, ex rel. Cleveland City Council, v. Cuyahoga Cty. Bd. of Elections* (1974), 40 Ohio App.2d 299, 69 O.O.2d 273, 318 N.E.2d 889.

In *Cleveland City Council*, the court of appeals determined that the city could not authorize an election of the question "whether or not there should be city-wide laws requiring the registration of firearms." *Id.* at 300, 69 O.O.2d at 274, 318 N.E.2d at 890. The court held that the city had no power to submit the proposed ordinance to the electorate absent charter or statutory authorization. *Id.* at 305, 69 O.O.2d at 277, 318 N.E.2d at 893; accord 1958 Ohio Atty.Gen.Ops. No. 2332. The court also held:

"Municipal [o]rdinances must accomplish some substantive or procedural governmental purpose. This [o]rdinance is nothing more than an 'advisory opinion' or local 'Gallup Poll' and is of no legal consequence. It merely proposes to advise the City Council of voter attitudes on the broad general subject of gun registration. Legislators are elected by the voters to perform

their duties as legislators and this function cannot be delegated by the legislators to the voters. If the electorate were to vote on all proposed ordinances, it would eliminate a need for legislative bodies. Further, costly election machinery cannot be used by legislative bodies to determine community attitudes and sentiments on public issues." *Id.* at 306, 69 O.O.2d at 278, 318 N.E.2d at 893–894.,

*Cleveland City Council* has been the polestar of Ohio case law on advisory elections for years. Bedford, however, challenges *Cleveland City Council*'s holding that a city cannot act without express charter or statutory authorization as being inconsistent with the city's constitutional powers of local self-government. Bedford also attacks the conclusion that public policy disfavors advisory elections.

## A

### The Exercise of Home Rule Powers Not Authorized by Charter or Statute

Bedford essentially concedes that its proposed ballot issue is only a first step to amending the city charter and, thus, that the question does not propose "alterations, revisions or amendments" pursuant to Section 6, Article XIII of the charter. The city contends, however, that it has the power to call the election without a specific enabling charter provision or statute because (1) municipal elections on matters of local concern are within the powers of local self-government conferred by Section 3, Article XVIII of the Ohio Constitution, and (2) these powers are self-executing. We agree.

The board of elections and Secretary of State do not dispute the purely local character and effect of the question Bedford proposes. Thus, Bedford's first premise is established by *Fitzgerald v. Cleveland* (1913), 88 Ohio St. 338, 347, 103 N.E. 512, 514, where, in holding that a city charter could provide for a method of nominating local candidates other than that prescribed by the General Assembly, this court said:

"It is clear upon reason and authority that municipal elections are and should be regarded as affairs relating to the municipality itself, and, in the absence of fundamental limitations prohibiting, are things that may be provided for by the local government.* * *" Accord *Reutener v. Cleveland* (1923), 107 Ohio St. 117, 133, 141 N.E. 27, 31.

Bedford's second premise is established by *Perrysburg v. Ridgway* (1923), 108 Ohio St. 245, 140 N.E. 595, paragraphs one and three of the syllabus, which state:

"1. Since the Constitution of 1912 became operative, all municipalities derive all their 'powers of local self-government' from the Constitution direct[ly], by virtue of Section 3, Article XVIII, thereof.

"* * *

"3. The above constitutional grant of power to municipalities is 'self-executing,' in the sense that no legislative action is necessary in order to make it available to the municipality."

*Perrysburg* stands for the principle that municipal power is derived from the Ohio Constitution, not from a charter. *Northern Ohio Patrolmen's Benevolent Assn. v. Parma* (1980), 61 Ohio St.2d 375, 380–381, 15 O.O.3d 450, 453–454, 402 N.E.2d 519, 523–524. Indeed, because a municipal charter is "neither a source of power nor necessary for its exercise[,]" Vaubel, Municipal Home Rule in Ohio (1975), 3 Ohio N.U.L.Rev. 1, 37, we have held that a city possesses home rule powers regardless of whether it has adopted a charter. *State, ex rel. Arey, v. Sherrill* (1944), 142 Ohio St. 574, 27 O.O. 505, 53 N.E.2d 501, paragraph one of the syllabus. Thus, contrary to *Cleveland City Council* and the elections authorities' argument, Bedford needs no charter authorization to call the instant election.

Nor has this court required a statutory source for a municipality to exercise the powers of local self-government. Instead, we have said that these powers are "inherent as an incident" of the self-executing constitutional grant in Section 3, Article XVIII of the Ohio Constitution. *State, ex rel. McClure, v. Hagerman* (1951), 155 Ohio St. 320, 323, 44 O.O. 309, 311, 98 N.E.2d 835, 837.

*State, ex. rel. Gordon, v. Rhodes* (1951), 156 Ohio St. 81, 45 O.O. 93, 100 N.E.2d 225, confirms that home rule powers granted by Section 3, Article XVIII of the Ohio Constitution exist without the aid of legislation and that those powers may be exercised freely and fully where not limited by relevant charter, statutory or constitutional provisions. In *Gordon*, the relator sought a writ of mandamus to compel city officials to enforce an ordinance, purportedly passed pursuant to certain state statutes, authorizing them to issue mortgage revenue bonds to finance the city's purchase of off-street parking facilities. The respondent officials had refused to execute the bonds, expressing doubt that the state could empower cities to issue mortgage bonds to finance such projects. This court held that cities have the authority to issue bonds for such a purpose without enabling legislation, because that authority was within the general home rule powers conferred by Section 3, Article XVIII of the Ohio Constitution, and was not limited by any relevant charter, statutory or constitutional provision. No such limitations existed in *Gordon*, and, therefore, we granted the writ.

The reasoning in *Gordon,* which manifests that the powers of local self-government are available unless restricted, applies here. Thus, this case does not turn, as *Cleveland City Council* concludes and the elections authorities submit, on whether the city charter or any statute *authorizes* an advisory election on the proposed Bedford charter amendment. Under *Gordon,* our focus must instead be on whether the Bedford Charter, the Revised Code, or the Ohio Constitution *prevents* the election.

Applying this test, we first find nothing in the city charter that expressly prohibits the instant advisory election. Sections 4 and 6, Article XIII of the Bedford Charter provide for elections on amendments proposed by a two-thirds vote of the city council or by petition of ten percent of the city electors, consistent with Section 9, Article XVIII of the Ohio Constitution, and on amendments proposed by a charter review commission. These sections, however, do not provide that *only* the amendments themselves may be placed on the ballot. Instead, Section 1, Article I of the charter provides:

" * * * [The city] shall have all powers of local self-government which now are, or hereafter may be granted to municipalities by the Constitution or laws of the State of Ohio, either expressly or by implication, as fully as though every such power were enumerated herein. The enumeration of or reference to particular powers by this Charter shall not be construed to be exclusive." See *Gordon, supra,* at 83, 45 O.O. at 94, 100 N.E.2d at 227.

The charter also does not implicitly prevent the advisory election. The election is proposed only as a precursor to, not in place of, an election on the amendment itself. Thus, this is not a situation like *Cuyahoga Falls v. Robart* (1991), 58 Ohio St.3d 1, 5, 567 N.E.2d 987, 991–992, in which we cited *Cleveland City Council* in holding that a charter provision requiring the city law director to represent the city in all litigation implicitly prevented the city from replacing the law director with outside counsel for this purpose. Indeed, we also said in *Robart* that the charter provision did not affect the city's ability to employ outside counsel to assist the law director. *Id.* at 5, 567 N.E.2d at 991–992, fn. 2. In doing so, we acknowledged a city's authority to act, as here, in ways not specified by, but not in violation of, its charter.

*Gordon* next requires us to consider the Revised Code. However, we are not aware of any statute that prohibits the advisory election Bedford proposes, and none is cited by the parties. Thus, we turn directly to Section 9, Article XVIII of the Ohio Constitution, which governs the charter amendment process.

As mentioned, Section 9, Article XVIII, Ohio Constitution and Section 4, Article XIII of the Bedford Charter contain essentially the same procedure for charter amendments while Section 6, Article XIII of the charter provides a

different process. In *Billington v. Cotner* (1971), 25 Ohio St.2d 140, 145–146, 54 O.O.2d 270, 273, 267 N.E.2d 410, 414, however, we held the constitutional procedure to be exclusive:

"Section 9, Article XVIII of the Ohio Constitution, provides that an amendment to a charter of a municipality 'may be submitted to the electors of a municipality by a two-thirds vote of the legislative authority thereof, and, upon petitions signed by ten per centum of the electors of the municipality setting forth any such proposed amendment, shall be submitted by such legislative authority.' The manifest object of this constitutional provision is to provide the procedure for the submission of a charter amendment to electors. The requirements are clear and complete, and are not to be added to or subtracted from." Accord *Switzer v. State, ex rel. Silvey* (1921), 103 Ohio St. 306, 314–315, 133 N.E. 552, 554.

*Billington* and *Switzer* suggest that the instant advisory election is constitutionally impermissible not because the election is outside Bedford's powers of local self-government, but because using such elections as a first step to charter amendment is inconsistent with the exclusive process in Section 9, Article XVIII, Ohio Constitution. However, we have allowed municipalities to supplement the constitutional charter amendment process with procedures that are not contrary to the express provisions in Section 9. See, *e.g.*, *Reutener, supra*, 107 Ohio St. at 133, 147 N.E. at 31 (sections of charter amendments may be submitted to electorate together as well as separately, since Constitution does not prohibit submission *en bloc*), and *State ex rel. Daniels, v. Portsmouth* (1939), 136 Ohio St. 15, 17, 15 O.O. 336, 337, 22 N.E.2d 913, 914 (charter may require that names of initiative committee members be placed on petition for charter amendment). As a result, we read *Billington* and *Switzer* narrowly and hold that procedures may be added to the constitutional charter amendment process if the additions do not conflict with the Ohio Constitution. Indeed, to hold otherwise would prevent all departures from constitutional requirements, including the apparently popular provision for amendment proposals by charter review commissions. See, *e.g.*, *State, ex rel. Rosch, v. Cuyahoga Cty. Bd. of Elections* (1975), 42 Ohio St.2d 364, 71 O.O.2d 329, 328 N.E.2d 793.

The advisory election in this case would have no effect on Bedford's observance of the constitutional requirements in Section 9. Again, the election is not intended as a substitute for an election on the amendment itself. Rather, the advisory election would only initially test the appeal of the proposed amendment, with a second election on the amendment to follow, if warranted. Moreover, the advisory election would serve the manifest objective of this constitutional provision by soliciting preliminary public approval of

charter changes. Thus, we do not find the election Bedford proposes objectionable from a constitutional standpoint.

Based on the foregoing, no law prohibits Bedford from authorizing an advisory election on this charter amendment. Accordingly, we hold, consistent with *Gordon, supra,* and Bedford's argument, that the city may call this election as a valid exercise of the constitutionally conferred powers of local self-government, notwithstanding that the election is not specifically authorized by the city's charter or by statute. Furthermore, because it does not properly account for these powers, we disapprove of the court of appeals' statement to the contrary in *Cleveland City Council.*

## B
## Public Policy

In addition to holding that a city can exercise home rule powers only with charter or statutory authorization, the court in *Cleveland City Council* concluded as a matter of policy that elections may never be used to determine public sentiment on issues involving matters of local self-government. We do not agree.

As Bedford points out, Section 8, Article XVIII of the Ohio Constitution provides for an advisory election as the first step in the adoption of a municipal charter. Specifically, Section 8 allows, and on petition by ten percent of the electors requires, a city council to authorize by ordinance an election on the question, "Shall a commission be chosen to frame a charter[?]" As the Ohio Constitution explicitly approves of an advisory election at this stage, we cannot say that policy considerations prevent similar elections after a charter is adopted, on the question of whether it should be amended. Accordingly, we also disapprove of *Cleveland City Council*'s broad statement that "costly election machinery cannot be used by legislative bodies to determine community attitudes and sentiments on public issues." *Id.* at 306, 69 O.O.2d at 278, 318 N.E.2d at 893–894.

Having determined that Bedford is entitled to authorize this advisory election and that the election is consistent with public policy, we hold that the court of appeals erred by relying on *Cleveland City Council* and reaching opposite conclusions. We further hold that Bedford has established a clear right to the election it seeks and that the board of elections and Secretary of State are, therefore, obligated to conduct the election.

## II
## Adequate Remedy

The last requirement for a writ of mandamus is the absence of an adequate remedy in the ordinary course of law. We consider this issue, even though

the court of appeals did not, pursuant to our plenary authority in extraordinary actions. *State, ex rel. Natalina Food Co., v. Ohio Civil Rights Comm.* (1990), 55 Ohio St.3d 98, 99, 562 N.E.2d 1383, 1384.

The Secretary of State does not dispute the lack of an adequate remedy, but the board of elections briefly suggests that Bedford could have protested the decision not to hold the advisory election on the charter amendment. The board, however, apparently did not present this opportunity to Bedford either before or after its decision. Thus, we cannot deny Bedford relief on this basis, especially since we have used mandamus in the past to compel a municipal election on a charter amendment. See *State, ex rel. Polcyn, v. Burkhart* (1973), 33 Ohio St.2d 7, 62 O.O.2d 202, 292 N.E.2d 883.

Bedford has, therefore, established all the elements necessary for a writ of mandamus. Accordingly, the judgment below is reversed and the writ is allowed.

*Judgment reversed*
*and writ allowed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.