[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 589.]

THE STATE EX REL. HUEBNER, APPELLANT, *v.* WEST JEFFERSON VILLAGE COUNCIL ET AL., APPELLEES.

[Cite as *State ex rel. Huebner v. W. Jefferson Village Council*, 1995-Ohio-105.]

*Elections—Method for determining the number of sufficient signatures on petitions involving proposed municipal charter amendments.*

(No. 95-58—Submitted April 4, 1995—Decided July 26, 1995.)

APPEAL from the Court of Appeals for Madison County, No. CA94-08-030.

_____

{¶ 1} Appellant, David A. Huebner, and other individuals circulated initiative part-petitions to place a proposed charter amendment on the November 8, 1994 ballot for the village of West Jefferson, Ohio. The proposed charter amendment read in part:

"PROPOSED WEST JEFFERSON CHARTER AMENDMENT SECTION (1): BE IT ORDAINED BY THE ELECTORS OF THE VILLAGE OF WEST JEFFERSON, COUNTY OF MADISON, STATE OF OHIO, THAT ARTICLE 4 SECTION 4.05(2) shall read:

"'The Village of West Jefferson, Ohio, is hereafter restricted to taxing wages only that originate within the boundaries of the Village of West Jefferson, Ohio, at a rate of 1%.'"

{¶ 2} On July 18, 1994, Huebner filed the initiative petition, consisting of nine part-petitions, with the Clerk of the West Jefferson Village Council during a council meeting. As of the date the initiative petition was filed, there were 2,272 registered voters in West Jefferson. The number of registered voters who had voted at the last general municipal election held on November 2, 1993 was 482. The Madison County Board of Elections certified that the initiative petition filed by Huebner contained 208 valid signatures.

**{¶ 3}** On August 15, 1994, appellees, West Jefferson Village Council members, unanimously voted not to certify the part-petitions to the board of elections "for the reason that they are not sufficient in form and in substance." Appellees believed that the petition did not contain sufficient valid signatures because it did not have signatures of at least ten percent of all of the electors in the village, i.e., ten percent of the 2,272 registered voters or 228 valid signatures. In addition, appellees thought that the petition misled signators into believing that the proceedings did not involve a charter amendment.

**{¶ 4}** On August 19, 1994, Huebner filed a complaint in the Court of Appeals for Madison County seeking a writ of mandamus to compel appellees to certify the initiative petition concerning the proposed charter amendment to the board of elections, so "that it be submitted to electors at the next regular municipal election if one shall not occur not less than sixty nor more than one hundred and twenty days after its passage; otherwise it shall provide for the submission of the question at a special election to be called and held within the time aforesaid." Section 8, Article XVIII, Ohio Constitution.

**{¶ 5}** After Huebner filed a "reply brief" to appellees' answer, appellees filed a motion for summary judgment. Huebner filed a memorandum in opposition to the summary judgment motion. On December 5, 1994, the court of appeals granted appellees' motion for summary judgment and denied the writ.

**{¶ 6}** The cause is now before this court upon an appeal as of right.

_____

*David A. Huebner, pro se.*

*Ronald C. Parsons*, Village of West Jefferson Law Director, for appellees.

_____

***Per Curiam.***

**{¶ 7}** In order to be entitled to a writ of mandamus, Huebner must establish that (1) he has a clear legal right to have the charter amendment initiative submitted

to the electorate, (2) appellees possess a clear legal duty to provide for certification of the proposed charter amendment to the electorate, and (3) Huebner has no adequate remedy in the ordinary course of law. *Morris v. Macedonia City Council* (1994), 71 Ohio St.3d 52, 54, 641 N.E.2d 1075, 1077.

{¶ 8} Huebner asserts in his various propositions of law that the court of appeals erred in granting summary judgment in favor of appellees and failing to issue the requested writ. The court of appeals determined that Huebner's initiative petition did not contain sufficient signatures requiring certification of the proposed charter amendment to the board of elections under Sections 8 and 9, Article XVIII of the Ohio Constitution and Section 16.01, Article XVI of the West Jefferson Village Charter.

{¶ 9} Section 7, Article XVIII of the Ohio Constitution authorizes municipal corporations to adopt and amend a home rule charter, and Sections 8 and 9 of Article XVIII prescribe the procedures for adopting and amending a charter. *Morris, supra*, 71 Ohio St.3d at 54, 641 N.E.2d at 1077, citing *State ex rel. Semik v. Cuyahoga Cty. Bd. of Elections* (1993), 67 Ohio St.3d 334, 346, 617 N.E.2d 1120, 1122. Section 9 of Article XVIII incorporates the requirements of Section 8, and "upon petitions signed by ten per centum of the electors of the municipality setting forth any such proposed amendment" requires the legislative authority of any municipality, *e.g.,* village council, to "forthwith" authorize an election on the charter amendment issue. *Morris, supra.* Section 16.01, Article XVI of the West Jefferson Village Charter similarly provides that "[c]ouncil *** upon petition signed by not less than ten percent (10%) of the electors of the Municipality setting forth any proposed amendment to this Charter *** shall submit such proposed amendment to the electors in accordance, in each instance, with the provisions of the [C]onstitution of Ohio and this Charter." An "elector" is a person having the qualifications provided by law to entitle that person to vote. R.C. 3501.01(N).

{¶ 10} Appellees and the court of appeals determined that the ten percent of electors specified in Sections 8 and 9, Article XVIII of the Ohio Constitution and Section 16.01, Article XVI of the West Jefferson Village Charter referred to all registered voters of the village. Huebner claims that this determination is erroneous based on Section 1*g*, Article II, Ohio Constitution, R.C. 3519.22, and R.C. 731.28. However, Section 1*g*, Article II, Ohio Constitution and R.C. 3519.22 apply only to statewide initiative and referendum petitions. See, *e.g., State ex rel. Home Fed. S. & L. Assn.of Hamilton v. Moser* (1974), 40 Ohio St.2d 94, 69 O.O.2d 442, 320 N.E.2d 672, paragraph one of the syllabus; *Dillon v. Cleveland* (1927), 117 Ohio St. 258, 158 N.E. 606, paragraph two of the syllabus; cf. *State ex rel. Spadafora v. Toledo City Council* (1994), 71 Ohio St.3d 546, 549, 644 N.E.2d 393, 395 (court concedes R.C. Chapter 3519 involves statewide intiative and referendum petitions, but holds that city council may invalidate signatures affixed to municipal referendum part-petition where part-petition violates R.C. 3519.06[C] on its face). Further, to the extent that the foregoing provisions, as well as R.C. 731.28, conflict with the charter amendment provisions set forth in Sections 8 and 9, Article XVIII of the Ohio Constitution, they are inapplicable. *State ex rel. Semik, supra*, 67 Ohio St.3d at 336, 617 N.E.2d at 1122; *State ex rel. Bedford v. Cuyahoga Cty. Bd. of Elections* (1991), 62 Ohio St.3d 17, 22, 577 N.E.2d 645, 648-649.

{¶ 11} Huebner's main contention below and on appeal is that Sections 8 and 9, Article XVIII of the Ohio Constitution and Section 16.01, Article XVI of the West Jefferson Village Charter should be construed in conjunction with Section 14 of Article XVIII, which provides:

"All elections and submissions of questions provided for in this article shall be conducted by the election authorities prescribed by general law. *The percentage of electors required to sign any petition provided for herein shall be based upon the total cast at the last preceding general municipal election.*" (Emphasis added.)

{¶ 12} The Home Rule Amendment to the Ohio Constitution authorizes municipalities "to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Section 3, Article XVIII, Ohio Constitution. Municipal elections are matters of local self-government and may be the subject of a charter provision. *State ex rel. Bedford, supra*, 62 Ohio St.3d at 19, 577 N.E.2d at 646. Therefore, to the extent that Section 16.01, Article XVI of the West Jefferson Village Charter conflicts with Section 14, Article XVIII of the Ohio Constitution, the Home Rule Amendment provides that the charter provision controls. Although the court of appeals did not base its decision on the foregoing, it supplies an independent basis to affirm its decision.

{¶ 13} Instead of contending that the charter provision is controlling under the village's home rule powers, appellees argued that Section 16.01, Article XVI of the West Jefferson Village Charter is in accordance with Sections 8 and 9, Article XVIII of the Ohio Constitution.

{¶ 14} Absent any provision in the Ohio Constitution regarding the interpretative issues involved, we may apply the general laws regarding statutory interpretation. See *State ex rel. Mirlisena v. Hamilton Cty. Bd. of Elections* (1993), 67 Ohio St.3d 597, 600, 622 N.E.2d 329, 331 (plurality opinion applying general provisions regarding statutory interpretation to analysis of municipal charter); see, also, *State ex rel. Paluf v. Feneli* (1994), 69 Ohio St.3d 138, 142, 630 N.E.2d 708, 711.

{¶ 15} R.C. 1.51 provides:

"If a general provision conflicts with a special or local provision, they shall be construed, if possible so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail." See, also, *State ex rel. Dublin*

*Securities, Inc. v. Ohio Div. of Securities* (1994), 68 Ohio St.3d 426, 429-430, 627 N.E.2d 993, 996; *United Tel. Co. of Ohio v. Limbach* (1994), 71 Ohio St.3d 369, 372, 643 N.E.2d 1129, 1131.

{¶ 16} The court of appeals determined that Section 9, Article XVIII of the Ohio Constitution is a special provision concerning charter amendments and thus controls over the general provision of Section 14, Article XVIII, Ohio Constitution. We agree. Section 9 specifically addresses petitions on proposed charter amendments. Conversely, Section 14 generally refers only to petitions provided for in Article XVIII. Section 9 states that charter amendments must be submitted to the electors "upon petitions signed by ten per centum of the electors of the municipality," which refers to all registered voters, not simply those electors who voted in the last preceding general election. Since Sections 9 and 14 are irreconcilably in conflict, the court of appeals properly held that Section 9 controls. Section 14 is thus inapplicable to proposed charter amendments.

{¶ 17} Consequently, because Huebner's petition contained only 208 valid signatures when he needed at least 228, appellees were under no duty to certify the proposed charter amendment, based on both the applicable charter provision and Section 9, Article XVIII of the Ohio Constitution. Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., WRIGHT and COOK, JJ., dissent.

———————————

**MOYER, C.J., dissenting.**

{¶ 18} I respectfully dissent from the judgment affirming the denial of the writ of mandamus. The majority initially relies on the Home Rule Amendment to hold that a municipal charter provision controls over a conflicting provision of the Ohio Constitution. However, because the provisions of a home-rule charter derive

their authority from the Ohio Constitution, where charter provisions are contrary to constitutional provisions, the Constitution prevails. *State ex rel. Semik v. Cuyahoga Cty. Bd. of Elections* (1993), 67 Ohio St.3d 334, 336, 617 N.E.2d 1120, 1122, citing *State ex rel. Hinchliffe v. Gibbons* (1927), 116 Ohio St. 390, 395, 156 N.E. 455, 457 ("'*** the Constitution being the higher authority, it must be regarded, and the charter must be ignored. The paramount authority must prevail over the subordinate authority.'"); see, also, *Bazell v. Cincinnati* (1968), 13 Ohio St.2d 63, 42 O.O.2d 137, 233 N.E.2d 864, paragraph one of the syllabus ("By reason of Sections 3 and 7 of Article XVIII of the Ohio Constitution, a charter city has all powers of local self-government *except to the extent that those powers are taken from it or limited by other provisions of the Constitution ****." Emphasis added.).

{¶ 19} The majority opinion's sole citation in support of its novel proposition is *State ex rel. Bedford v. Cuyahoga Cty. Bd. of Elections* (1991), 62 Ohio St.3d 17, 577 N.E.2d 645. However, *State ex rel. Bedford, supra*, expressly held that a municipal charter provision that was contrary to the process provided by the Ohio Constitution for charter amendments was invalid. Therefore, the Home Rule Amendment does not supply an "independent basis" to affirm the court of appeals' judgment, and neither appellees nor the court of appeals stated otherwise.

{¶ 20} As to the court of appeals' rationale that the writ should be denied on the basis that Section 9, Article XVIII of the Ohio Constitution is a special provision concerning charter amendments and thus controls over the general provision of Section 14, Article XVIII, Ohio Constitution, it is only where a conflict is deemed irreconcilable that R.C. 1.51 mandates that one provision shall prevail over another. *United Tel. Co. of Ohio v. Limbach* (1994), 71 Ohio St.3d 369, 372, 643 N.E.2d 1129, 1131. All provisions which relate to the same general subject matter must be read *in pari materia*, and in construing these provisions together, courts must harmonize and give full application to all provisions "unless they are irreconcilable

and in hopeless conflict." *Johnson's Markets, Inc. v. New Carlisle Dept. of Health* (1991), 58 Ohio St.3d 28, 35, 567 N.E.2d 1018, 1025.

{¶ 21} Here, the court of appeals erred in effectively determining that Sections 9 and 14, Article XVIII of the Ohio Constitution are irreconcilable. Both provisions relate to the same general subject matter, *i.e.*, submission of issues to the electorate. While it is true that Section 9 addresses more specifically the issue of charter amendments, Section 14 manifestly provides that "[t]he percentage of electors required to sign *any petition provided for herein* shall be based upon the total vote cast at the last preceding general municipal election." (Emphasis added.) The word "herein" refers to the phrase "in this article" from the first sentence of Section 14, Article XVIII. Sections 8 and 9 are two of the provisions in Article XVIII which refer to a percentage of electors required to sign a petition. Accordingly, the "ten per centum of electors" specified in Sections 8 and 9 must, under Section 14, be "*based upon* the total vote cast at the last preceding municipal election." (Emphasis added.) By thus reading Sections 8 and 9 *in pari materia* with Section 14, the petition must contain ten percent of the total vote cast at the last preceding general municipal election. There is no conflict between the provisions. Rather, Section 14 merely clarifies what the "ten percentum of electors" referred to in Sections 8 and 9 is "based upon." This construction comports with our duty to harmonize and give full application to all of these pertinent provisions since they are neither irreconcilable nor in "hopeless conflict." *Id.*

{¶ 22} Further, we have recently so applied Section 14 in cases involving charter amendments under Section 9, *Morris v. Macedonia City Council* (1994), 71 Ohio St.3d 52, 641 N.E.2d 1075, and charter commission issues under Section 8. *State ex rel. Concerned Citizens for More Professional Govt. v. Zanesville City Council* (1994), 70 Ohio St.3d 455, 457, 639 N.E.2d 421, 423. The Secretary of State's preprinted form for a petition to submit a proposed charter amendment refers to both Sections 9 and 14 of Article XVIII and states that it is "[t]o be signed by ten

per cent of the electors based on the total vote cast at the last preceding General Municipal Election." See, also, Baldwin's Ohio Revised Code Annotated (1994) 518, Editor's Comment to Section 14, Article XVIII, Ohio Constitution ("This section provides that any election held under the Home Rule Amendment is to follow normal election procedures, and that the percentage of signatures required on any petition circulated under the Amendment is to be calculated on the total vote cast at the last general election in the municipality. Article XVIII specifically provides for petitions or elections in [Section] 2 (adoption of alternative form of municipal government; see R.C. Ch. 705), [Section] 5 (referendum on acquiring or operating utility), [Section] 8 (frame and adopt charter), and [Section] 9 (amendment of charter.)").[1]

{¶ 23} The court of appeals based its determination that Section 9 prevails over Section 14 partly because Section 9 was last amended in 1971, whereas Section 14 has not been amended since its enactment in 1912. The court of appeals concluded that Section 9 was thus a later expression of the will of the electors. See *Vollmer v. Amherst* (1940), 65 Ohio App. 26, 32, 18 O.O. 266, 269, 29 N.E.2d 379, 382. However, as previously noted, the provisions are not irreconcilable. Further, both Sections 9 and 14, Article XVIII of the Ohio Constitution were adopted at the 1912 Constitutional Convention, and the 1971 amendment to Section 9 merely permitted notice of proposed charter amendments to be given by newspaper advertising in lieu of mailing. See Am.Sub.S.J.R. No. 31, 133 Ohio Senate Journal (1969-1970) 1508. The amendment had nothing to do with the provisions pertinent to this cause.

---

1. Since Sections 5, 8, and 9, Article XVIII, Ohio Constitution all refer to "ten per centum of the electors of the municipality," a holding that Section 14 of Article XVIII does not apply to those provisions even though its clear language indicates its applicability to "any petition provided for" in Article XVIII would render Section 14 meaningless. This unreasonable result could not have been intended by the framers of the 1912 Ohio Constitution.

{¶ 24} Therefore, since Section 14 applies in conjunction with Sections 8 and 9 of Article XVIII, Ohio Constitution, and the number of electors who voted at the last preceding general municipal election was 482, Huebner needed only forty-nine valid signatures to have the issue certified by appellees to the board of elections. Since the initiative petition filed by Huebner contained 208 valid signatures, the petition contained a sufficient number of valid signatures. Appellees and the court of appeals erred in concluding otherwise.

{¶ 25} Accordingly, the judgment of the court of appeals should be reversed and the writ granted to compel appellees to certify the proposed charter amendment to the board of elections for placement, pursuant to Section 8, Article XVIII, Ohio Constitution, on the ballot "at the next regular municipal election if one shall occur not less than sixty nor more than one hundred and twenty days after its passage; otherwise it shall provide for the submission of the question at a special election to be called and held in the time aforesaid."

WRIGHT and COOK, JJ., concur in the foregoing dissenting opinion.

————————————