THE STATE EX REL. LEWIS *v.* HAMILTON COUNTY BOARD OF ELECTIONS ET AL.

THE STATE EX REL. TAXPAYERS FOR ACCOUNTABLE GOVERNMENT
ET AL. *v.* CINCINNATI CITY COUNCIL ET AL.

[Cite as *State ex rel. Lewis v. Hamilton Cty. Bd.*
*of Elections* (1995), 74 Ohio St.3d 1201.]

(Nos. 95–1689 and 95–1714—Submitted and decided August 28, 1995.)

*Laufman, Rauh & Gerhardstein* and *Robert F. Laufman,* for relator William B. Lewis in case No. 95–1689.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, *Gordon M. Strauss* and *Robert E. Taylor,* Assistant Prosecuting Attorneys, for respondents Hamilton County Board of Elections et al. in case No. 95–1689.

*Betty D. Montgomery,* Attorney General, *Susan E. Ashbrook* and *Andrew S. Bergman,* Assistant Attorneys General, for intervenors-respondent Secretary of State Bob Taft in case No. 95–1689.

*Greenebaum, Doll & McDonald, P.L.L.C., Christopher P. Finney, Robert D. Hudson* and *Thomas H. Stewart,* for intervenors-respondents and relators Taxpayers for Accountable Government et al. in case Nos. 95–1689 and 95–1714.

*Fay D. Dupuis,* City Solicitor, *Robert H. Johnstone,* Deputy City Solicitor, and *Richard Ganulin,* Assistant City Solicitor, for respondents Cincinnati City Council et al. in case Nos. 95–1689 and 95–1714.

*S. David Worhatch,* urging dismissal of the complaint or denial of relief for *amici curiae,* John Ricchiuto et al. and David A. Huebner et al. in case No. 95–1689.

### Case No. 95–1689

This cause originated in this court on the filing of a complaint for writs of mandamus and prohibition regarding an expedited election matter. Upon consideration of respondents' motion to dismiss or for summary judgment,

IT IS ORDERED by the court that the motion to dismiss be, and hereby is, granted.

IT IS FURTHER ORDERED by the court that this cause be, and hereby is, dismissed, effective August 28, 1995.

Case No. 95–1714

This cause originated in this court on the filing of a complaint for a writ of prohibition regarding an expedited election matter. Upon consideration of relators' application for dismissal,

IT IS ORDERED by the court that the application for dismissal be, and hereby is, granted, effective August 28, 1995.

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

MOYER, C.J., concurring. I agree with the majority in case No. 95–1689 that dismissal of relator's writ of mandamus is required. I write separately to emphasize several points expressed in my dissent to *State ex rel. Huebner v. W. Jefferson Village Council* (1995), 72 Ohio St.3d 589, 651 N.E.2d 1001. Unfortunately, the majority opinion in *Huebner* apparently created an unintended result.

In *Huebner*, this court held that Section 9, Article XVIII of the Ohio Constitution should be read in isolation from Section 14, Article XVIII. I am pleased that the majority in *Huebner* now correctly reads Section 9 *in pari materia* with Section 14. While Section 9 establishes the *percentage* of electors required to sign any petition, Section 14 clearly and unequivocally provides that in "[a]ll elections and submissions of questions provided for in this article * * * [t]he percentage of electors required to sign any petition provided for herein shall be *based upon the total vote cast at the last preceding general municipal election.*" (Emphasis added.) As I have noted, "Section 14 merely clarifies what the 'ten percentum of electors' referred to in * * * [Section] 9 is 'based upon.' This construction comports with our duty to harmonize and give full application to all of these pertinent provisions since they are neither irreconcilable nor in 'hopeless conflict.' [Citation omitted]." *State ex rel. Huebner*, 72 Ohio St.3d at 594–595, 651 N.E.2d at 1005 (Moyer, C.J., dissenting).

Active participation in the election process is the foundation of democracy. Whether selecting a candidate for public office or deciding issues of public concern, voting is a basic right without which all other rights become meaningless. It follows that where the Ohio Constitution or statutes establishing the requirement for placing issues on election ballots create doubt, such doubt should be resolved in favor of providing the citizens with access to the ballot.

The intention and effect of the plain language of Section 14, when read with the other sections of Article XVIII, are to encourage citizens to place issues on the ballot. By reducing the base number of electors from which the ten percent of

required signatures is calculated, Section 14 allows the individual easier access to the political process in presenting important issues for consideration and possible approval by the electorate. Because the part-petitions for the proposed charter amendment contained the sufficient number of signatures, based on the last municipal election, I vote to dismiss relator's writ of mandamus in case No. 95–1689.

DOUGLAS, J., concurring. On July 26, 1995, this court issued a *per curiam* opinion in case No. 95–58, *State ex rel. Huebner v. W. Jefferson Village Council.* 72 Ohio St.3d 589, 651 N.E.2d 1001. No mandate has yet been issued by the court because a motion for reconsideration of our decision has been filed. See S.Ct.Prac.R. XI(3)(A).

In addition to the motion for reconsideration filed in case No. 95–58, *Huebner* has generated additional cases. Two of those cases are Nos. 95–1689, *State ex rel. Lewis v. Hamilton Cty. Bd. of Elections,* and 95–1714, *State ex rel. Taxpayers for Accountable Govt. v. Cincinnati City Council.* These cases arise out of an election matter in Cincinnati.

## I

### Case No. 95–1689

In this case, relator seeks writs of mandamus and/or prohibition to prevent respondents, the Hamilton County Board of Elections and its members, from conducting an election set to be held on August 30, 1995. The election is for the purpose of determining whether a proposed amendment to the Charter of the City of Cincinnati should be adopted. The election has been scheduled by respondents pursuant to an ordinance certified by Cincinnati City Council to respondents, which ordinance proposes the charter amendment in question. In addition, respondents had verified that petitions, seeking a vote on the proposed charter amendment, contained sufficient valid signatures for the issue to be presented to the voters of Cincinnati for a determination as to whether the charter should be amended.

For (at least) the two reasons which follow, relator's original action for writs of mandamus and/or prohibition should be dismissed.

### A. Section 9, Article XVIII, Ohio Constitution

Section 9, Article XVIII of the Ohio Constitution reads, in pertinent part, that "[a]mendments to any charter framed and adopted as herein provided *may* be submitted to the electors of a municipality by a two-thirds vote of the legislative authority thereof, and, upon petitions signed by ten per centum of the electors of the municipality * * *, *shall* be submitted by such legislative authority." (Emphasis added.)

Thus, there are two ways to secure a vote on a proposed charter amendment. One of those ways is for the legislative authority (city council) to authorize, by at least a two-thirds vote of its membership, submission of the proposed amendment to the electors. This method is separate and apart from the other method, *i.e.*, the petition route. In this case (95–1689), the legislative authority (Cincinnati City Council) voted *unanimously* to place the proposed charter amendment on the ballot at a special election. That action by city council ends this case and that is so even though the petition process was also used. As we said in the second paragraph of the syllabus of *State ex rel. Kittel v. Bigelow* (1941), 138 Ohio St. 497, 21 O.O. 380, 37 N.E.2d 41:

"Where a petition has been filed with the legislative authority of a municipality requesting the passage of an ordinance submitting a proposed charter amendment to the electorate, and the legislative authority in fact passes an ordinance of submission *by a vote of two-thirds or more of its members, any defects in the filing or signing of the petition become immaterial,* even though the preamble of the ordinance recites that the legislative authority is acting in response to the petition." (Emphasis added.)

Notwithstanding the foregoing, relator contends, in paragraph thirteen of his amended verified complaint, that "[f]ive of the members of Cincinnati City Council who voted to put the Charter Amendment [on] did not favor putting the amendment on the ballot but so voted only because they believed a favorable vote was mandatory once sufficient signatures were certified." Attached to the complaint are the affidavits of five councilpersons—Qualls, Sterne, Portune, Yates and Tillery. Each affidavit is virtually an exact duplicate of the others both in form and substance. The affidavits read, in part, that "I did not favor putting the Charter Amendment on the ballot. I voted in favor of Ordinance 205–1955 because the Board of Elections certified that there were enough valid signatures to meet the requirement for placing the issue on the ballot. I voted yes only because I believed that a favorable vote was mandatory once sufficient signatures were certified." Thus, it is relator's position that the five councilpersons cast their votes in favor of the ordinance because they were laboring under a misconception and, therefore, there were not enough votes (six out of nine) to place the issue on the ballot.

Relator's position is not well taken. In *Kittel, supra,* we also said that "[c]ouncil had the unquestioned power under Section 9, Article XVIII of the Constitution of Ohio, to enact this legislation by a two-thirds vote without any petitions. *The court will not examine into the motives, whether expressed or unexpressed, which may have induced the exercise of this power. It is not within the judicial province to nullify a statute or ordinance merely because of the alleged impropriety or mistaken beliefs underlying the legislators' reasons for enacting it.*" (Emphasis added.) *Id.* at 502, 21 O.O. at 383, 37 N.E.2d at 44.

Accordingly, when the Cincinnati City Council, by a two-thirds or more vote of its membership, voted to hold a special election on the proposed charter amendment, the council complied with Section 9, Article XVIII of the Ohio Constitution. Thus, the board of elections has a clear duty to hold the election and relator's action must be dismissed.

## B. Laches

In *State ex rel. White v. Franklin Cty. Bd. of Elections* (1992), 65 Ohio St.3d 45, 48, 600 N.E.2d 656, 659, we said that "[w]e have routinely dismissed complaints or otherwise denied extraordinary relief in election-related cases due to laches." In *State ex rel. Hinkle v. Franklin Cty. Bd. of Elections* (1989), 47 Ohio St.3d 117, 548 N.E.2d 230, we denied a writ of mandamus sought by relator to require placement on the ballot of certain local option questions. In denying the requested writ, we said that "absentee ballots had already been printed and mailed to electors who would have been affected by the questions * * * proposed." We then denied the writ due to laches. The same reasoning applies here. Absentee ballots have been distributed and a number have been voted. The hour of decision (objection) has long since come and gone. Case No. 95–1689 must also be dismissed on the basis of laches. Once the election process has begun, absent a complete lack of authority to hold the election in the first instance, the process must not be disturbed.

## II

## Case No. 95–1714

This case also involves the proposed amendment to the Cincinnati City Charter. The action seeks a writ of prohibition to prevent the Cincinnati City Council from repealing its ordinance, which certified the proposed amendment of the charter to the board of elections. The action also seeks to prohibit the board from acting on any attempt by the city council to remove the proposed amendment issue from the August 30, 1995 special election ballot.

The city council met and the city council decided. The council decided to indefinitely postpone consideration of an ordinance seeking repeal of the council's original action of certification. Accordingly, case No. 95–1714 must be dismissed as moot.

## III

## Conclusion

For the foregoing reasons, case Nos. 95–1689 and 95–1714 must be dismissed. Accordingly, I concur in their dismissal.

RESNICK, J., concurs in the foregoing concurring opinion.